Rebecca DAMERON, on behalf of herself and all others similarly situated

v.

SINAI HOSPITAL OF BALTIMORE, INC.; Administrative Committee of Sinai Hospital of Baltimore, Inc.; Grace Pryor; Sinai Hospital of Baltimore, Inc. Pension Plan For Employees Covered Under the Collective Bargaining Agreement Between the National Union of Hospital and Health Care Employees, Division of R.W.D.S.U., AFL–CIO, and Its Affiliate Local District 1119 E, and Sinai Hospital of Baltimore, Inc.

Civ. A. No. M–83–2835.

United States District Court,
D. Maryland.

Oct. 4, 1984.

Luther Blackiston, Legal Aid Bureau, Inc., Towson, Md., Gill Deford and Neal S. Dudovitz, Nat. Senior Citizens Law Center, Los Angeles, Cal., for plaintiffs.

Leonard E. Cohen, Jeffrey Rockman, Rudolph E. DeMeo, and Frank, Bernstein, Conaway & Goldman, Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

On August 2, 1983, Rebecca Dameron filed a class action suit against Sinai Hospital, the Administrative Committee of Sinai Hospital [the Committee], and the Sinai Hospital Pension Plan [the Plan] [1] seeking declaratory and injunctive relief and alleg-

---

**1.** Grace Pryor, Supervisor of Compensation for Sinai Hospital, was also named as a defendant but the plaintiff voluntarily has dismissed her from the case (Paper No. 27, ¶ 1) on the grounds that she is not a fiduciary within the meaning of sections 3(21)(a) and 404(a)(1) of ERISA, codified at 29 U.S.C. § 1002(21)(A) and 1104(a)(1).

Dismissal on those grounds is appropriate. She in no way has responsibility for the administration of the pension plan. Her responsibilities are limited to mechanical nondiscretionary tasks. *See* Paper No. 13, at 14 and Ex. 2, Pryor affidavit.

ing that the system used by the defendants to calculate estimated Social Security benefits and to offset those benefits against the amount of the pension benefits to be paid by the Plan violates certain provisions of ERISA, 29 U.S.C. § 1001 *et seq.* and the Taft-Hartley Act, 29 U.S.C. §§ 185, 186 (Paper No. 1).

Pending before this court are plaintiff's motion for class certification (Paper No. 19) filed on April 16, 1984 and defendants' opposition thereto (Paper No. 24). In addition, by agreement of all parties, the defendants' motion to dismiss (Paper No. 8)[2] and the parties' cross motions for summary judgment (Paper No. 13[3] and 20[4]) have been consolidated.

Before addressing the individual and class-based claims set forth by the named plaintiff, this court will consider the propriety of certifying the class.

## A) *Class Certification*

The named plaintiff, Rebecca Dameron, worked at Sinai Hospital for 11 years. At 62 years of age she retired and applied for Social Security benefits. Three years later she applied for her pension benefits under the Sinai Pension Plan. After an initial dispute regarding the benefits due her, the Sinai Pension Plan found her to be entitled to $14.50 per month. To arrive at that figure, the defendants calculated the estimated Social Security benefits Ms. Dameron would receive per month and factored that figure into the system employed by the Plan to determine the amount of pension benefits the Plan would pay Ms. Dameron monthly.

Ms. Dameron claims, and it is undisputed by the defendants, that the estimated Social Security benefits figure calculated by the defendants was a higher figure than the actual amount of Social Security benefits Ms. Dameron received. The defendants offset the amount the Plan would pay by using the higher Social Security figure, and thus the amount of benefits Ms. Dam-

eron receives from the pension plan ($14.50) is lower than the amount she alleges she is entitled to receive.

She seeks certification of a class consisting of all other persons who have received, currently receive, or will receive benefits (or would receive benefits but for the estimated Social Security benefit deduction) under the Sinai pension plan and have had, are having, or will have these benefits reduced by an amount derived by using an estimated Social Security benefit which is in excess of the amount of the Social Security benefits which they actually received or will receive after leaving the service of Sinai Hospital to retire (Paper No. 19 at 1).

Fed.R.Civ.P. 23(a) sets out four initial requirements for class certification: 1) numerosity; 2) commonality; 3) typicality; and 4) adequacy of representation. If those requirements are satisfied, a class action may be maintained if it also meets the requirements of Fed.R.Civ.P. 23(b). The plaintiff asserts that, in this action, "the party opposing the class has acted or refused to act on grounds generally applicable to the class," *see* Fed.R.Civ.P. 23(b)(2) and, therefore, that class certification is appropriate.

### 1) *Numerosity*

The plaintiff estimates that the class consists of at least 47 to 51 persons who have retired from Sinai Hospital. That number appears to be a realistic figure. In fact, the defendants concur that 51 participants in the plan have retired since the pension plan went into effect (*see* Paper No. 24, affidavit of Pryor ¶ 6). The plaintiff further asserts that the size of the class will increase in the future if the defendants continue the allegedly illegal practice of using estimated Social Security benefits to calculate the amount of pension benefits payable by the plan. Because, as set forth *infra*, this court concludes that a conflict may exist between the named plaintiff and

---

**2.** Plaintiff's opposition to motion to dismiss—Paper No. 10.

**3.** Plaintiff's reply to defendants' summary judgment—Paper No. 26.

**4.** Defendants' reply to plaintiff's summary judgment—Paper No. 25.

future retirees, this court will not consider the expanding nature of the class in determining whether the numerosity requirement is met.

■ To satisfy the numerosity requirement, the plaintiff must show that joinder is impractical. Fed.R.Civ.P. 23(a)(1). Impracticality of joinder is not determined by a numerical test alone. *Ballard v. Blue Shield*, 543 F.2d 1075, 1080 (4th Cir.1976), *cert. denied*, 430 U.S. 922, 97 S.Ct. 1341, 51 L.Ed.2d 601 (1977). Courts generally consider in addition to the size of the class, the geographic diversity of class members, the difficulty of identification, and the negative impact on judicial economy if individual suits were required. *See, e.g., Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir.1981); *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275–76 (10th Cir.1977); *Christman v. American Cyanamid Co.*, 92 F.R.D. 441, 451 (N.D.W.Va.1981). A class consisting of as few as 25 to 30 members raises the presumption that joinder would be impractical. *See EEOC v. Printing Industry*, 92 F.R.D. 51, 53 (D.D.C.1981); 1 H. Newburg, *Class Actions* § 1105b at 174 (1977).

■ Because the putative class is elderly, some members may no longer live in the area. In addition, resolution of the legal issues involved in this case on a class basis would be more economical than on an individual basis. For these reasons, the court concludes that joinder is impractical and that the numerosity requirement has been satisfied.

### 2) *Commonality*

■ Both plaintiff and defendants agree that this case focuses on the legality of the defendants' practice of using estimated Social Security benefits rather than the actual benefits received by the plaintiff and the putative class to calculate Sinai Pension Plan's benefit payable to a participant. A common question of law exists as to all members of the class.

### 3) *Typicality*

"The typicality requirement focuses on the consideration of whether the represent-

ative's interests are truly aligned and consistent with those of the class members. Factual differences will not necessarily render a claim atypical if the representative's claim arises from the same event, practice or course of conduct that gives rise to the claims of the class and is based on the same legal theory." *Smith v. B & O Railroad Co.*, 473 F.Supp. 572, 581 (D.Md.1979); *see also Doe v. Heckler*, 576 F.Supp. 463, 468 (D.Md.1983); 7 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1764 at 613–14 (1972).

The plaintiff seeks to enjoin the defendants from reducing her pension and the pensions of the putative class members by using estimated Social Security benefit calculations which are larger than the actual benefit the class member receives. Her claim is consistent with that of the putative class. If she prevails, all class members will benefit. The typicality requirement is met.

### 4) *Adequacy of Representation*

"It is an essential prerequisite to the right to maintain a class action under Rule 23 that the court be certain the representatives will adequately protect the interests of all class members." 7 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1765 at 620 (1972) *citing Hill v. Western Electric Co.*, 672 F.2d 381, 388 (4th Cir.), *cert. denied*, 459 U.S. 981, 103 S.Ct. 318, 74 L.Ed.2d 294 (1982). "The adequacy of representation by a plaintiff is ultimately a question of fact with respect to which that plaintiff must bear the burden of proof." *Predmore v. Allen*, 407 F.Supp. 1053, 1064 (D.Md.1975).

■ The defendants pose two major challenges to the class representative's adequacy. They argue first that Ms. Dameron's claim is barred by the statute of limitations and, therefore, that she cannot represent the class. As the Fourth Circuit recently has pointed out, "[c]ourts passing upon motions for class certification have generally refused to consider the impact of such affirmative defenses as the statute of limitations on the potential representative's

case." *International Woodworkers v. Chesapeake Bay Plywood*, 659 F.2d 1259, 1270 (4th Cir.1981). "This view is supported by the principle that the class representative need not show a probability of individual success on the merits...." 1 H. Newburg, *Class Actions*, § 1115(e) at 191 (1977). Therefore, this court will not cloud the issue of adequate representation with the statute of limitations problem. If the named plaintiff's claim is barred by statute of limitations, a proper plaintiff may be substituted to represent the class. *International Woodworkers v. Chesapeake Bay Plywood*, 659 F.2d at 1270.

■ The main focus of the adequacy of the named plaintiff's representation of the class is on potentially antagonistic or conflicting objectives of the named plaintiff in the litigation with those of the members of the putative class. 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1768 at 638 (1972). The defendants argue that Ms. Dameron's claim is antagonistic to the interests of one segment of the class she seeks to represent—those employees who "will receive" benefits from the Plan subject to the estimated Social Security benefits offset. They contend that if Ms. Dameron is successful, the relief she seeks will result in additional costs to Sinai Hospital in funding the Plan. Thus, they argue, money for payment of these additional costs would be money that might otherwise be available to Sinai to cover pay increases or to improve general benefits for current employees under the collective bargaining agreement.

In *United Independent Flight Officers v. United Air Lines*, 572 F.Supp. 1494 (N.D.Ill.1983), the court considered the conflict between retirees and current employees (future retirees) in a pension plan case. That court had before it evidence that some of the current employees "fear that improvements in the retirement benefits may come from the 'pay package.'" *Id.* at 1500. Therefore, the court concluded that "[t]here is a ... very real risk of conflict between active pilots and retired pilots ...

a conflict going to the subject matter of the litigation...." *Id.*

This court has no real evidence before it that the current employees of Sinai Hospital share similar fears, but even potential antagonistic interests are enough to cause concern about adequacy of representation. *See, e.g., Boro Hall v. Metropolitan Tobacco Co., Inc.*, 74 F.R.D. 142, 144 (E.D.N.Y. 1977); *Plekowski v. Ralston Purina Co.*, 68 F.R.D. 443, 452 (M.D.Ga.1975), *appeal dismissed*, 557 F.2d 1218 (5th Cir.1977).

This court, as guardian of the interests of the class, *Shelton v. Pargo*, 582 F.2d 1298, 1306 n. 20 (4th Cir.1978), believes that this potential conflict should be explored to ascertain its proportions. Therefore, counsel for plaintiff and defendants are ordered to meet jointly on this question with an appropriate representative(s) of the union(s) representing Sinai Hospital workers and to report to the court the outcome of that meeting. With the information derived from such a meeting, this court might be in a better position to assess whether the named plaintiff can represent adequately the interests of future retirees/current employees.

Although this court entertains some doubts concerning the adequacy of the named class representative to represent future retirees, there is no doubt that Ms. Dameron can represent adequately the interests of current retirees. When questions arise as to a named plaintiff's ability to represent the interests of some part of the putative class, it is proper for the court "to limit the class to those persons who would be adequately protected by the named representative...." 7 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1765 at 624–25 (1972) *citing, inter alia, Long v. Robinson*, 436 F.2d 1116 (4th Cir.1971). *See also Burwell v. Eastern Airlines, Inc.*, 68 F.R.D. 495, 497 (E.D.Va. 1975).

Therefore, a class of current retirees only will be certified at this time.[5] That class meets the prerequisites of Fed.R.

---

**5.** This court is satisfied that counsel for the named plaintiff will represent adequately the interests of the class. *See* Paper No. 19, citing

plaintiff's counsel's experience in class litigation.

Civ.P. 23(a) and, in addition, because the defendants have acted on grounds generally applicable to the class making injunctive and declaratory relief appropriate, the class is an appropriate one for certification under Fed.R.Civ.P. 23(b)(2).

**B)** *Statute of Limitations*

1) *Factual Background*

On November 14, 1977, shortly before her 63rd birthday, Ms. Dameron retired from her employment at Sinai Hospital. At that time she did not seek early retirement benefits from the Sinai Pension Plan, but applied for and began to receive Social Security benefits. Sometime before her 65th birthday in 1979, Ms. Dameron applied for retirement benefits under the Sinai Pension Plan, but she was informed she was not entitled to such benefits.

On November 14, 1979, Ms. Dameron wrote to the Administrative Committee of Sinai Hospital seeking a written explanation of her denial of benefits.[6] On November 29, 1979, Denis E. Orthans, Sinai Director of Personnel, responded to Ms. Dameron's letter by explaining:

"The reason you are not entitled to any benefit under the plan provisions is determined by Schedule III. Your estimated primary Social Security benefit of $441.30 was derived from a table of estimated benefits approved by the Internal Revenue Service for the purpose of calculating pensions under defined benefit pension plans such as Sinai's. Since 83 1/3% of the Primary Social Security Benefit (i.e. $367.75) is greater than 50% of your Average Monthly Compensation (i.e. $365.19) no benefits are available to you under the provisions of the Plan."

(Paper No. 8, Ex. C).

Ms. Dameron, on December 28, 1979, appealed the decision of denial of benefits[7] (Paper No. 8, Ex. D). Almost six months later, on June 13, 1980, the Secretary of the

Administrative Committee, Norman Karshmer, sent Ms. Dameron a letter stating that the Committee had reviewed the facts regarding her eligibility but had concluded that she was not eligible for pension benefits.

Mr. Karshmer's letter explained that

"The Committee reviewed the following facts regarding your eligibility for benefits.

1. Date of Hire: 12/27/66
2. Date of Birth: 12/04/20
3. Date of Retirement: 11/14/77
4. Length of Service at Retirement: 10 years 11 months
5. 50% of Final Average Compensation: $360.13
6. 83-1/3% of Estimated Social Security Benefit: $370.65

The formula of Sinai Hospital's defined benefit plan in effect at the time you retired gives you a benefit of 50% of your Final Average Compensation (see line 5) minus 83-1/3% of your Estimated Social Security Benefit (see line 6). When an employee has considerably less than 25 years of service, the Social Security benefit is usually greater than the average monthly compensation amount. As you can see from the above figures, in your circumstances the effect of applying this pension formula results in a negative figure. Consequently, there is no benefit available to you from the Sinai Hospital Pension Plan."

Ms. Dameron then sought legal assistance from Legal Aid Services, which by letter of January 28, 1981 challenged the use of the estimated social security benefit amount in calculating Ms. Dameron's pension benefits. It also pointed out that the Committee had used an incorrect birthdate in calculating her pension entitlement[8] (Paper No. 8, Ex. F).

Leonard Marcus, Secretary of the Administrative Committee, responded on Feb-

---

6. Both parties agree to this fact, although no letter has been produced to the court.

7. Ms. Dameron's right to appeal is provided for in article 14 of the Pension Plan. (Paper No. 8, Ex. B).

8. Ms. Dameron claimed her birthdate was December 4, 1914, not the December 4, 1920 date used by the defendants to calculate her normal retirement date.

ruary 2, 1981, that Ms. Dameron could submit additional evidence regarding her correct birthdate and that her pension benefit would be recalculated to reflect the correct birthdate "in accordance with the language of the pension plan in effect at her termination date." (Paper No. 8, Ex. G).

Within a few days, Legal Aid provided documentation of Ms. Dameron's correct birthdate (Paper No. 8, Ex. H), and in March, 1981, the Committee recalculated her benefits finding that she was due $14.50 per month (Paper No. 8, Ex. I).

Although Ms. Dameron began to receive, and continues to receive, the $14.50 monthly pension payment, through Legal Aid she protested the use of estimated Social Security benefits in calculating her pension entitlement (Paper No. 10, Exs. A, B & C, Letters of June, July & August, 1981). In each of the three letters sent on her behalf, Legal Aid requested a copy of the Pension Plan. On September 17, 1981, the Manager of Compensation, Grace Pryor, responded to the plaintiff's letter and included a copy of the pension plan.

### 2) *Legal Analysis*

Based on the foregoing facts, the defendants contend that each of the plaintiff's claims are subject to the three year statute of limitations. The plaintiff, on the other hand, argues the doctrine of laches is applicable.

Although, as explained *infra*, ERISA claims such as those asserted herein may be considered equitable in nature and thus subject to the defense of laches, the starting point in a laches analysis is often a review of the analogous statute of limitations period to determine the reasonableness of the lapse of time between accrual of the action and the filing of suit. *Corley v. Hecht Co.*, 530 F.Supp. 1155, 1159 (D.D.C.1982); *Moore v. Exxon Transportation,*

502 F.Supp. 583, 586 (E.D.Va.1980); *Baumel v. Rosen*, 283 F.Supp. 128, 143 (D.Md. 1968). Therefore, this court will consider the statutes of limitations the defendants argue are applicable to each cause of action.

### a) *Violation of Fiduciary Duty*

■ In Counts II and III, the plaintiff alleges that the defendants breached a fiduciary duty to the plaintiff[9] by using an estimated Social Security benefits amount, rather than the actual amount of Social Security benefits Ms. Dameron received, to calculate her entitlement to Sinai pension benefits.

"No action may be commenced under [ERISA] with respect to a fiduciary's breach of any responsibility, duty, or obligation ... after ... three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation...." 29 U.S.C. § 1113. Thus the plaintiff's cause of action under Counts II and III accrued on the date she knew or should have known of the alleged violation or breach.

■ The alleged breach, as stated previously, is based on the use of an estimated Social Security benefits figure. It is undisputed that the letter plus attachment sent to Ms. Dameron on November 26, 1979 (Paper No. 8, Ex. C) informed her that an estimated Social Security benefit calculation had been used to offset the amount of pension benefits she would receive from the Sinai Pension Plan. She again was informed by the letter of June 13, 1980, (Paper No. 8, Ex. E) that an estimated Social Security benefit figure was used. It is clear from both letters that that estimated figure bore no relationship to, and was significantly higher than, the actual amount of Social Security she was receiving. It is also clear from the letters that that was the reason she was awarded no benefits.[10] Therefore, the plaintiff's cause

---

**9.** As to Counts I and II, there is no dispute between the parties that the statutory three year statute of limitations, 29 U.S.C. § 1113, is applicable rather than the doctrine of laches.

**10.** The plaintiff argues that the offset and integration issue, at the heart of which is the use of an estimated Social Security benefit calculation, is very complex and that it was only after her counsel studied the system used by the Plan to calculate her benefits that she knew of the

of action for breach of fiduciary duty arose at the earliest on November 26, 1979 and at the latest on June 13, 1980. Her suit filed August 2, 1983, as to Counts II and III is time barred.

That reasoning is equally applicable to the breach of fiduciary duty claim brought pursuant to § 301 and § 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 185 and 186(c)(5), embodied in Count II. Because no federal statute of limitations is provided for those actions, the court's task is "to 'borrow' the most suitable statute or other rule of timeliness from some other source." *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, ——, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983). Such borrowing generally is done from analogous state statutes of limitations. *Id.* Because the trustees' obligations to members of a pension fund under §§ 301 and 302 are founded on a written contract, the collective bargaining agreement, *Smith v. Evening News*, 371 U.S. 195, 200–201, 83 S.Ct. 267, 270–271, 9 L.Ed.2d 246 (1962); *Rehmar v. Smith*, 555 F.2d 1362, 1366 (9th Cir.1976), courts have applied state statutes applicable to contract actions, *Butler v. Local Union 823*, 514 F.2d 442, 446 (8th Cir.), *cert. denied* 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975); *Morgan v. Laborers Pension Trust Fund*, 433 F.Supp. 518, 526 (N.D.Calif. 1977). This court will follow that practice in the case at bar and will apply Maryland's three year statute of limitations, *Md.Cts. & Jud.Proc. Code Ann.* § 5–101.[11]

Although an analogous state statute of limitations establishes the time period within which suit must be brought, federal law controls when the federal cause of action accrues. *See Blanck v. McKeen*, 707 F.2d 817, 819 (4th Cir.1983) *citing Campbell v. Haverhill*, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280 (1895). It appears to this court that a cause of action for breach of fiduciary duty brought pursuant to the Labor Management Relations Act, 29 U.S.C. §§ 185, 186, will accrue at the same point in time that a cause of action brought on the same facts accrues under ERISA, 29 U.S.C. § 1113, *i.e.,* when the plaintiff had actual knowledge of the breach.

This court has concluded that Ms. Dameron had actual knowledge of the breach at the latest on June 13, 1980. Her claims based on violations of 29 U.S.C. §§ 185 and 186 are, therefore, time barred.

#### B) *Other ERISA Claims*

In Count I the plaintiff alleges a violation of 29 U.S.C. § 1056(b) which prohibits a pension plan from decreasing pension benefits by the amount of any increases in Social Security benefits received after an employee is separated from the service of an employer.[12] The plaintiff alleges in

---

breach of duty. The court takes note of the apparent complexity of the system used to arrive at the estimated Social Security benefits but a full understanding of that system was not necessary to grasp that the estimated Social Security benefits calculated by the Plan far exceeded the actual benefits Ms. Dameron received. It is the use of an estimated figure which exceeds actual benefits that Ms. Dameron claims constitutes the breach of duty. She had actual knowledge of that practice at least by June 13, 1980.

**11.** In the alternative, this court may look to analogous federal laws to determine an appropriate limitations period. *See DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, —— n. 12 & ——, 103 S.Ct. 2281, 2287 n. 12 & 2288, 76 L.Ed.2d 476. When state law is at odds with the purpose of federal substantive law, the court will not mechanically apply state limitations periods. *See Occidental Life Insur-*

*ance Co. v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977). The state statute of limitations period, because it is in congruence with the statute of limitations set forth in 29 U.S.C. § 1113 for breach of fiduciary duty under ERISA, is not at odds with the purpose of the Labor Management Relations Act.

**12.** (b) If—

(1) a participant or beneficiary is receiving benefits under a pension plan, or

(2) a participant is separated from the service and has non-forfeitable rights to benefits, a plan may not decrease benefits of such a participant by reason of any increase in the benefit levels payable under title II of the Social Security Act or the Railroad Retirement Act of 1937, or any increase in the wage base under such title II, if such increase takes place after September 2, 1974, or (if later) the earlier of the date of first entitlement of such benefits or the date of such separation. 29 U.S.C. § 1056(b).

Count IV that the defendants have violated 29 U.S.C. § 1053(a), which protects employee's benefits from being forfeited.[13] In Count V she alleges that the defendants violated 29 U.S.C. § 1056(a) which protects early retirees who wait until actual retirement age to request pension benefits from reductions in pension benefits because of early retirement.[14] Finally, in Count VI, the plaintiff alleges that the defendants have assigned or alienated her pension benefits in violation of 29 U.S.C. § 1056(d)(1).[15]

■ ERISA explicitly grants a participant or beneficiary of a pension plan the right to bring suit to recover benefits, enforce his rights, and/or to clarify his rights under the Plan. 29 U.S.C. § 1132(a). Neither 29 U.S.C. § 1132(a) nor the substantive provisions of ERISA upon which the plaintiff's claim is based expressly provide for a statute of limitations.

Therefore, reference to state law is appropriate. *See DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, ——, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476; *Auto Workers v. Hoosier Corp.,* 383 U.S. 696, 701–02, 86 S.Ct. 1107, 1110–11, 16 L.Ed.2d 192 (1966). Several courts, in determining which state statute of limitations is applicable to non-fiduciary type ERISA claims seeking recovery of pension benefits

and clarification of rights under the pension plan, have characterized such claims as contract claims. *See Jenkins v. Local 705,* 713 F.2d 247, 253 (7th Cir.1983); *Livolsi v. City of New Castle,* 501 F.Supp. 1146, 1151 (W.D.Pa.1980). They have reasoned that the action "is based on the written contract pension plan," *Jenkins v. Local 705,* 713 F.2d at 253, or that a contract statute of limitations applies because the "central allegations involve a breach of contractual duties." *Livolsi v. City of New Castle,* 501 F.Supp. at 1151. That reasoning is appropriate and is accepted by this court in this action. Therefore, Maryland's three year statute of limitations for contract actions, *Md.Cts. & Jud.Proc. Code Ann.* § 5–101, is applicable herein.

Uniformly, courts recognize that an ERISA cause of action accrues when an application for benefits is denied. *See Jenkins v. Local 705,* 713 F.2d at 254; *Paris v. Profit Sharing Plan,* 637 F.2d 357, 361 (5th Cir.1981), *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981); *Reiherzer v. Shannon,* 581 F.2d 1266, 1272 (7th Cir.1978); *Oates v. Teamsters Affiliates Pension Plan,* 482 F.Supp. 481, 484 (D.D.C.1979).

The defendants argue that on November 26, 1979, when they initially explained the

13. (a) Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition shall satisfy the requirements of paragraphs (1) and (2) of this subsection.

(1) A plan satisfies the requirements of this paragraph if an employee's rights in his accrued benefit derived from his own contributions are nonforfeitable.

(2) A plan satisfies the requirements of this paragraph if it satisfies the requirements of subparagraph (A), (B), or (C).

(A) A plan satisfies the requirements of this subparagraph if an employee who has at least 10 years of service has a nonforfeitable right to 100 percent of his accrued benefit derived from employer contributions.

29 U.S.C. § 1053(a)(1), (2)(A).

14. (a) Each pension plan shall provide that unless the participant otherwise elects, the payment of benefits under the plan to the participant shall begin not later than the 60th day after the latest of the close of the plan year in which—

(1) the date on which the participant attains the earlier of age 65 or the normal retirement age specified under the plan,

(2) occurs the 10th anniversary of the year in which the participant commenced participation in the plan, or

(3) the participant terminates his service with the employer.

In the case of a plan which provides for the payment of an early retirement benefit, such plan shall provide that a participant who satisfied the service requirements for such early retirement benefit, but separated from the service (with any nonforfeitable right to an accrued benefit) before satisfying the age requirement for such early retirement benefit, is entitled upon satisfaction of such age requirement to receive a benefit not less than the benefit to which he would be entitled at the normal retirement age, actuarially reduced under regulations prescribed by the Secretary of the Treasury.

29 U.S.C. § 1056(a).

15. (d)(1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

denial of benefits to Ms. Dameron, Ms. Dameron's cause of action accrued, but such an assertion is controverted by the Pension Plan itself.

Under article 14 of the Plan a claimant may request review of the initial denial within 60 days of the denial (Paper No. 8, Ex. B, Art. 14(b)). If such a request is made, the Committee is required to make "a final, binding decision within sixty days of the filing ... of [a] request for reconsideration...." [16] (Paper No. 8, Ex. B, Art. 14(d)). The Committee, by letter of June 13, 1980, informed Ms. Dameron that Sinai adhered to its initial decision that no benefits were payable to her. The defendants have argued alternatively that the June 13, 1980 decision was the final decision of denial and that Ms. Dameron's claims are time barred.

The plaintiff, however, points to the series of events after June 13, 1980 which led to a recalculation of her benefits and receipt of $14.50 per month. It is undisputed that in March, 1981, the defendants reconsidered and recalculated Ms. Dameron's benefits based on new information regarding her birthdate. The plaintiff argues that such reconsideration constituted a reopening of Ms. Dameron's case and that the decision to award her $14.50 per month represents the final decision in her case. She asserts that it was at that point that she knew that the defendants would not recalculate her benefits to reflect an offset based on the actual Social Security benefits she was receiving. In essence, she argues that it was not until the administrative process had run its full course that a cause of action arose under ERISA for statute of limitations purposes.

Although the ERISA statute nowhere requires exhaustion of administrative remedies, "[t]he legislative history of ERISA clearly suggests that Congress intended to grant authority to the courts to apply the exhaustion requirement in suits arising under the Act." *Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir.1980). In fact, "ERISA itself requires covered benefit plans to provide administrative remedies for persons whose claims for benefits have been denied." *Id.* citing 29 U.S.C. § 1133. The pension plan at issue here contains such remedies. (Paper No. 8, Ex. B, Article 14).

There does exist an interplay between exhaustion and statute of limitations in this case, and this court agrees with the plaintiff that a cause of action cannot arise under ERISA until administrative remedies are exhausted. *See, e.g., Jenkins v. Local 705*, 713 F.2d at 254; *Mahan v. Reynolds Metal Co.*, 569 F.Supp. 482, 485 (E.D.Ark. 1983); *Michota v. Anheuser Busch, Inc.*, 526 F.Supp. 299, 321 (D.N.J.1980), *affirmed in part, reversed on other grounds*, 670 F.2d 387 (3rd Cir.1982). Some balance must be struck to effectuate the policies underlying exhaustion and statutes of limitations. Allowing a reasonable period of time to pursue one's claim through administrative channels insures to all the benefit of internal administrative dispute resolution. Still a tenacious plaintiff should not be allowed to renew stale claims merely by requesting reconsideration of "final" decisions. As the court in *Morgan v. Laborers Pension Trust Fund*, 433 F.Supp. 518 (N.D.Calif.1977), pointed out, review of original pension calculations "is in the best interests of the pension fund members and should be encouraged. If a Court were to rule that an applicant's cause of action is renewed each time a pension fund informally re-examines his pension request, pension funds would simply refrain from doing so." *Id.* at 525. The policy of finality and repose must be satisfied by identifying a date, reasonably ascertainable, which triggers the running of the statute of limitations.

Within the administrative review process established under ERISA, 29 U.S.C. § 1133, and by the Plan itself (Paper No. 8, Ex. B, Article 14), two identifiable dates of decisionmaking are described. The first is the initial determination of eligibility or

---

**16.** The Committee did not make a final determination within the timeliness set out in the Plan. Ms. Dameron requested reconsideration of denial on December 28, 1979. Six months later, the Committee issued its decision that Ms. Dameron was not entitled to receive pension benefits.

denial of benefits. 29 U.S.C. § 1133(1); Pension Plan, Art. 14.1(a). The second is the date of reconsideration of denial and notice to the plaintiff of that decision. 29 U.S.C. § 1133(2); Pension Plan, Art. 14(b)–(e).

■ Absent unusual circumstances, the date the beneficiary was notified of the reconsideration decision will trigger the running of the statute of limitations. The plaintiff, in effect, argues that circumstances in this case indicate that the statute did not begin to run on that date (June 13, 1980), but at a later date—the date the Committee, on the basis of her corrected birthdate, recalculated Ms. Dameron's benefits (March 1, 1981). But, as stated previously, each reconsideration of a benefits decision should not trigger anew the running of limitations. It is clear, in the case at bar, that the defendants did not formally reopen Ms. Dameron's case on the issue of estimated Social Security benefits. They merely inserted her correct birthdate into the formula used to calculate benefits. The recalculation resulted in a payment of $14.50 per month to Ms. Dameron. The defendants had made a final decision on the estimated Social Security benefits issue on June 13, 1980. Thus, Ms. Dameron's claim is barred by the statute of limitations.

■ That decision does not end the inquiry, however. If the doctrine of laches is applicable herein, this court must consider the circumstances of the case, apply principles of equity, and determine if the claims are barred. Generally, a court will assess the reasonableness of the delay and the prejudice suffered by the defendant as a result of the delay. See Gardner v. Panama Railroad Co., 342 U.S. 29, 31, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951) (per curiam); Tobacco Workers International Union v. Lorillard Corp., 448 F.2d 949, 958 (4th Cir. 1971).

C) *The Applicability of Laches* [17]

Whether the doctrine of laches applies depends on whether the claims presented may be characterized as legal or equitable. Several courts have grappled with the legal or equitable nature of ERISA actions within the context of jury trial rights and have concluded that because the claims presented were equitable in nature no right to a jury trial existed. See, e.g., In re Vorpahl, 695 F.2d 318, 319–22 (8th Cir.1982) (action for current and future benefits under 29 U.S.C. § 1132(a)(1)(B)); Wardle v. Central States, 627 F.2d 820, 828–30 (7th Cir.1980), cert. denied, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981) (action challenging denial of retirement benefits under 29 U.S.C. § 1132(a)(1)(B)); Calamia v. Spivey, 632 F.2d 1235, 1236–37 (5th Cir.1980) (action challenging the inaccurate calculation of benefits); Kann v. Keystone Resources, Inc., 575 F.Supp. 1084, 1089 (W.D.Pa.1983) (action challenging refusal to pay accrued vested benefits); Foulke v. Bethlehem Steel 1980 Salaried Pension Plan, 565 F.Supp. 882, 883 (E.D.Pa.1983) (challenging improper denial of lump sum payment); Diano v. Central States, Southeast and Southwest Areas Health, Welfare and Pension Funds, 551 F.Supp. 861, 862 (N.D. Ohio 1982) (demand for benefits due). But see Stamps v. Michigan Teamsters Joint Council, 431 F.Supp. 745 (E.D.Mich.1977) (finding that 29 U.S.C. § 1132(a)(1)(B) created legal, rather than equitable right) (opinion questioned by all subsequent cases); compare Pollack v. Castrovinci, 476 F.Supp. 606, 608–09 (S.D.N.Y.1979), aff'd without opinion, 622 F.2d 575 (2d Cir.1980) (legal rather than equitable right) with Rubin v. Decision Concepts, Inc., 566 F.Supp. 1057, 1059 (S.D.N.Y.1983) (questioning Pollack).

■ One commentator in discussing the law/equity distinction in ERISA actions has examined both the right asserted and the relief demanded to determine if they

---

**17.** Of the cases concerning time bars in ERISA actions, only one has applied the laches doctrine, see Comstock v. Northern Retirement Trust Co., No. 79–1189–S (D.Mass. July 26, 1982) (unpublished) (Paper No. 10, Ex. E). In all other cases cited herein applying statutes of limitations in ERISA cases, the courts did not address the possibility that laches was applicable.

are analogous to those asserted in an action at law. Comment, Right to Jury Trial in Enforcement Actions Under Section 502(a)(1)(B) of ERISA, 96 Harv.L.Rev. 737 (1983).[18] This court agrees that "[b]ecause plan enforcement actions lie against trusts, the right embodied in these actions is, with one narrow exception [discussed *infra*], exclusively equitable. The plan enforcement subsection of ERISA empowers beneficiaries to sue their benefit plans, which hold the beneficiaries' assets 'in trust.' Trusts, in turn, were creatures of equity, and their terms enforced by the Chancellor. Plan enforcement actions thus partake of a long equitable tradition." *Id.* at 748–49 (citations omitted).

It is when the beneficiary sues for payment of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) that arguably a legal action is maintained, but under the law of trusts and the traditions of equity, such an action is legal "only if the defendant trustee admits that the plaintiff is entitled to benefits." *Id.* at 751–52. Such is rarely the case.

As to whether the remedy requested is legal or equitable, it is clear that of three remedies available under 29 U.S.C. § 1132(a)(1)(B)—recovery of benefits, enforcement of rights, and clarification of rights to future benefits—the latter two are equitable. "The enforcement remedy is in essence an affirmative injunction ... and the clarification remedy embodies the declarative force of an injunction." *Id.* at 756.

"Recovery of benefits is a retrospective remedy similar to compensatory damages and is thus legal in nature." *Id.* at 752 (citation omitted). But "only if the trustee admitted his obligation to the beneficiary could the beneficiary have brought an action at law." *Id.* at 756.

The foregoing analysis establishes that the ERISA claims brought by this plaintiff pursuant to 29 U.S.C. § 1132(a)(1)(B) are equitable in nature. This court will apply the doctrine of laches to determine whether the plaintiff's claim is barred.

■ Because laches is an affirmative defense, the defendant bears the ultimate burden of proving "(1) the lack of diligence by the party against whom the defense is asserted and (2) prejudice to the party asserting the defense." *Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961). "The defendant's burden is initially satisfied by a showing that the action is not commenced within the period provided by the analogous statute of limitations...." *Moore v. Exxon Transportation Co.,* 502 F.Supp. 583, 586 (E.D. Va.1980); *see also Boone v. Mechanical Specialties,* 609 F.2d 956, 958 (9th Cir. 1979).

■ Similarly, prejudice to the defendant will be presumed when the delay is in excess of the analogized statute of limitations. *See Gruca v. United States Steel Corp.,* 495 F.2d 1252, 1260 (3rd Cir.1974); *Ramos v. Continental Insurance Co.,* 493 F.2d 329, 332 (1st Cir.1974); *Giddens v. Isbrandtsen Co.,* 355 F.2d 125, 128 (4th Cir.1966).

■ As has been determined, the plaintiff herein has filed suit outside the limitations period. The presumption of unreasonable delay therefore has arisen. The plaintiff may rebut that presumption by explaining the reasons for the delay or demonstrating lack of prejudice. *See Giddens v. Isbrandtsen Co.,* 355 F.2d at 128.

The plaintiff attempts to explain the delay by describing the complexity of the defendants' system used to calculate the estimated Social Security benefit amount which is used to offset the amount of the pension benefit the Plan will pay. This court has stated (see note 10) that despite such alleged complexity, it was clear from the letters and explanations of the defendants that the estimated Social Security figure was far higher than the actual amount of Social Security received by the plaintiff.

---

**18.** Although the law/equity dichotomy is discussed in this comment in the context of jury trial rights, the discussion applies generally to the characterization of ERISA claims and thus is applicable to the question of whether laches is an appropriate defense to ERISA actions.

Whether the plaintiff understood how that figure was arrived at is not a basis for excusing the delay.

Further, the plaintiff asserts in a conclusory fashion that no prejudice affects the defendants. Her claim, she states, is as live today as it was in earlier years. But, as the defendants point out, any delay in bringing suit increases the damages to which the defendants may be liable if the plaintiff prevails. Pension plans have a need for stability, a need to plan with some precision in order to protect the rights of all beneficiaries. Any delay in filing suit to recover benefits prejudices these defendants. Therefore, the plaintiff's claim is barred by laches.

As a result of this decision, Ms. Dameron is not a proper representative of the class. Substitution of a new named plaintiff is necessary. This court will await substitution before addressing the merits of the class members' claims that the defendants' use of an estimated Social Security benefits amount violates ERISA. Each new named plaintiff seeking leave to represent the class must meet the requirements of Fed. R.Civ.P. 23(a).

Accordingly, it is this 4th day of October, 1984, by the United States District Court for the District of Maryland, ORDERED:

1) That the plaintiff's motion for class certification is GRANTED in part certifying a class of current retirees who are beneficiaries of the Sinai Pension Plan and have had or are having their benefits reduced by an amount derived by using an estimated Social Security benefit that is in excess of the amount of the Social Security benefits which they actually received after leaving the service of Sinai Hospital to retire.

2) That counsel for plaintiff and defendants are to meet with the union(s) representing Sinai Hospital employees to ascertain the extent of the alleged conflict between current employees and retirees in pressing this action and to report to this court the result of that meeting within 30 days of this Order.

3) That the defendants' motion for summary judgment on the issue of statute of limitations is GRANTED.

4) That an appropriate named plaintiff(s) be substituted to represent the interests of the class within thirty (30) days of the date of this Order.

5) That the schedule in this case be, and is hereby, amended as follows:

| | |
|---|---|
| Motion to Substitute Class Representative | November 5, 1984 |
| Response to Motion | November 23, 1984 |
| Hearing on Motion to Substitute and Summary Judgment | Friday, January 11, 1985, at 10:00 a.m. |
| Pre-Trial Conference | Wednesday, February 6, 1985, at 4:30 p.m. |
| Trial | Tuesday, February 19, 1985, at 10:00 a.m. |

6) That the Clerk mail a copy of this Memorandum and Order to counsel for the parties.