Rebecca DAMERON, on behalf of herself and all others similarly situated

v.

SINAI HOSPITAL OF BALTIMORE, INC.; Administrative Committee of Sinai Hospital of Baltimore, Inc.; Grace Pryor; Sinai Hospital of Baltimore, Inc. Pension Plan for Employees Covered Under the Collective Bargaining Agreement Between the National Union of Hospital and Health Care Employees, Division of R.W.D.S.U., AFL–CIO, and its Affiliate Local District 1119 E, and Sinai Hospital of Baltimore, Inc.

Civ. A. No. M–83–2835.

United States District Court,
D. Maryland.

Jan. 16, 1986.

Luther Blackiston, Legal Aid Bureau, Inc., Towson, Md., Gill Deford and Neal S. Dudovitz, Nat. Senior Citizens Law Center, Los Angeles, Cal., for plaintiffs.

Leonard E. Cohen, Jeffrey Rockman, Rudolph E. DeMeo and Frank, Bernstein, Conaway & Goldman, Baltimore, Md., for defendants.

### MEMORANDUM

JAMES R. MILLER, Jr., District Judge.

On October 4, 1984, this court granted the plaintiff's motion for class certification, but found that the named class representative's claim was barred by the statute of limitations and laches. Therefore, leave to substitute appropriate named plaintiff(s) was granted. At that time, the court held in abeyance any decision on the merits of the parties' cross motions for summary judgment pending a decision on the substitution of named class representatives. *Dameron v. Sinai Hospital*, 595 F.Supp. 1404 (D.Md.1984).

The plaintiffs have since filed a motion for leave to substitute class representatives (Paper Nos. 31 & 33), and the defendants have responded (Paper No. 32).

Also pending before the court are the parties' cross motions for summary judgment (Paper No. 13, Defendants' Motion for Summary Judgment; Paper No. 20, Plaintiffs' Motion for Summary Judgment;

Paper No. 25, Defendants' Opposition; Paper No. 26, Plaintiffs' Reply). A hearing was held on all pending matters on November 8, 1985.

### A. *Substitution of Class Representatives*

■ The class certified by the court consists of current retirees who are beneficiaries of the Sinai Pension Plan and have had or are having their benefits reduced by an amount derived by using an estimated Social Security benefit which is in excess of the amount of the Social Security benefits which they have actually received after leaving the service of Sinai Hospital to retire. *Dameron,* 595 F.Supp. at 1417. Florence McLean and Pinkie Ricks have moved for leave to represent that class.

Florence McLean worked for Sinai Hospital for 15 years, from September 1968 through January 1983. Upon retiring at age 63, she applied for Social Security early retirement and her Sinai pension. She began to receive monthly Social Security benefits of $278.50. When Sinai calculated her pension benefits, it used an estimated Social Security benefit figure,[1] rather than the actual amount she received, to offset against the pension benefits Sinai Pension Plan would pay. Therefore, it calculated her pension to be $82.18 per month (Paper No. 31, Affidavit of McLean, Ex. A).

Pinkie Ricks worked for Sinai Hospital for 9 years, from 1973 to August 1982, at which latter time she was 62 years old. She applied for early Social Security retirement benefits and her Sinai pension. At the time of her retirement, she began receiving $262.40 monthly in Social Security benefits. Sinai calculated her pension using estimated Social Security benefits,[2] and she received, therefore, $36.07 per month in Sinai pension benefits (Paper No. 31, Affidavit of Ricks, Ex. C).

Pursuant to Fed.R.Civ.P. 23(a), this court has ruled previously that the class is so numerous that joinder of all members is impracticable and that there are common

---

1. The estimated benefit was calculated to be $491.00 per month (Paper No. 32 at 5).

2. The estimated benefits were calculated to be $460.75 per month (Paper No. 32 at 5).

questions of law and fact among them. *Dameron v. Sinai Hospital,* 595 F.Supp. at 1407–08. Because Ms. McLean and Ms. Ricks seek to enjoin the Sinai Pension Plan from using estimated Social Security benefits which are larger than the actual benefits they have received upon retirement, their claims are typical of the claims of the class, and if they prevail, all class members will benefit. Finally, the claims of the proposed class representatives do not conflict with those of the class, and it appears Ms. McLean and Ms. Ricks will fairly and adequately represent the class. Therefore, for these reasons and those explained below, Ms. McLean and Ms. Ricks will be substituted as class representatives, despite the defendants' argument that they are not proper plaintiffs or proper class representatives.

█ The defendants argue that neither Ms. McLean nor Ms. Ricks exhausted her administrative remedies. Exhaustion of administrative remedies usually is required before an action may be brought under ERISA, *see, e.g., Dameron v. Sinai Hospital,* 595 F.Supp. at 1414 and cases cited therein, and under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185; *see, e.g., Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965); *Fabian v. Freight Drivers and Helpers Local 557,* 448 F.Supp. 835, 838–39 (D.Md.1978). It is undisputed that the two proposed class representatives did not exhaust their administrative remedies.

"Exhaustion is generally required as a matter of preventing premature interference with agency processes, to afford the parties and the courts the benefits of agency experience and expertise, to compile a record which is adequate for judicial review, and to allow the agency to function efficiently and have an opportunity to correct its own errors." *Eastern Band of Cherokee Indians v. Donovan,* 739 F.2d 153, 156 (4th Cir.1984).

█ The requirement of exhaustion, however, may be waived. *See, e.g., Weinberger v. Salfi,* 422 U.S. 749, 765–67, 95 S.Ct. 2457, 2466–67, 45 L.Ed.2d 522 (1975); *Mandel v. U.S. Department of Health, Education and Welfare,* 411 F.Supp. 542, 546–47 (D.Md.1976), *aff'd,* 571 F.2d 1273 (4th Cir.), *cert. denied,* 439 U.S. 862, 99 S.Ct. 184, 58 L.Ed.2d 171 (1978). One of the major reasons for waiving the exhaustion requirement is futility. *See, e.g., Davis v. Southeastern Community College,* 574 F.2d 1158, 1160 (4th Cir.1978), *rev'd on other grounds,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). Futility has been recognized as an exception to the exhaustion doctrine in the pension area. *See, e.g., Jenkins v. Local 705,* 713 F.2d 247, 254 (7th Cir.1983); *Taylor v. Bakery & Confectionary Union & Industry Int'l Welfare Fund,* 455 F.Supp. 816, 820 (E.D.N.C.1978).

█ In this action, the Sinai Pension Plan has determined that its method of calculating pension benefits will not be changed. Ms. Rebecca Dameron, the original named class representative in this action, challenged the Plan's method of calculating her benefits, exhausted her administrative remedies, and was informed on appeal that the Plan would not change the method of calculating her pension benefits. *See Dameron v. Sinai Hospital,* 595 F.Supp. at 1410–11. Where "[t]he Board [of Trustees] has already determined [the] question ... [and] there is no reason to believe that it will change its position," exhaustion would be futile. *Morgan v. Laborers Pension Trust Fund,* 433 F.Supp. 518, 529 (N.D.Cal.1977).

The Board of Trustees of the Sinai Pension Plan has indicated clearly that it does not intend to stop using the estimated Social Security benefit to calculate pension benefits of class members. A change of position occurring during the named class representatives' exhaustion of administrative process is highly unlikely to say the least. This court will not require the plaintiffs to undertake a futile administrative challenge to the Plan's method of calculating benefits.

█ The defendants challenge the propriety of the claims of the newly named

class representatives on an additional ground. They argue that because these class representatives do not have a full work history back to 1951, they are not receiving the full Social Security benefit which a person with a full work history would receive. Therefore, the defendants assert that the actual Social Security benefits granted to these plaintiffs, of necessity, will be lower than their estimated benefits. That proposition certainly is true, but it does not lead to the defendants' conclusion that neither "Ms. McLean nor Ms. Ricks has suffered any real injury." (Paper No. 32 at 7).

The injury complained of here is that the defendants' method of calculating and offsetting pension benefits by using estimated Social Security benefit figures, rather than actual Social Security benefits received, violates federal law, and, consequently, results in the receipt by them of less money in combined pension and Social Security benefits than they would have received if the calculations by defendants were in accord with federal law. That surely alleges a cognizable injury.

### B. *Expanding the Scope of the Class*

■ The court previously considered whether the class representatives who were current retirees could represent the interests of future retirees without conflict. Accordingly, the parties were directed to seek the opinion of the union representing current employees. In a letter to the court on November 12, 1984, the counsel for the union responded that no conflict existed between the current and future retirees regarding the issue before the court. (*See* Paper No. 33, Ex. A).

As a result, the class will be defined as consisting of current and future retirees who are or will be beneficiaries of the Sinai Pension Plan and who have had, are having, or will have their benefits reduced by an amount derived by using an estimated Social Security monthly benefit which is in excess of the amount of the Social Security monthly benefit which they actually have received or will receive after leaving the service of Sinai Hospital to retire.

### C. *Merits of the Class Claim*

The named plaintiffs and the class they represent seek a declaration that the use of the estimated Social Security monthly benefit to calculate pension benefits violates each of two specific provisions of ERISA, the nonforfeitability rule, 29 U.S.C. § 1053(a), and the anti-assignment rule, 29 U.S.C. § 1056(d), along with the general fiduciary duty provisions of ERISA, 29 U.S.C. § 1104(a)(1), and the Labor Management Relations Act, 29 U.S.C. §§ 185, 186(c)(5), which prohibit arbitrary and capricious behavior by fiduciaries.

Both sides to this dispute agree that the central issue in this case is the legality under ERISA of using an estimated Social Security offset as opposed to an offset based upon the actual Social Security award to an employee (Paper No. 25 at 3; Paper No. 26 at 1).

### 1) *Description of the Sinai Pension Plan*

The Sinai Pension Plan is an integrated pension plan. " 'Integrated' [is] a calculation practice under which benefit levels are determined by combining pension funds with other income streams available to the retired employees. Through integration, each income stream contributes for calculation purposes to the total benefit pool to be distributed to all retired employees, even if the nonpension funds are available only to a subgroup of the employees. The pension funds are thus integrated with the funds from other income maintenance programs, such as Social Security, and the pension benefit level is determined on the basis of the entire pool of funds." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 514, 101 S.Ct. 1895, 1901, 68 L.Ed.2d 402 (1981). "... Congress expressly preserved the option of pension fund integration with benefits available under ... the Social Security Act" when it passed ERISA. *Id.*

One method by which integration is accomplished is the offset plan method.

" 'Offset plan' means a plan under which ... all provisions including the benefit rates apply uniformly to all covered employees regardless of compensation, except that an employee's benefit otherwise computed under the plan formula is reduced or offset by a stated percentage of such employee's old-age insurance benefit under the Social Security Act." Rev.Rule 71–446 § 2.07(3). Sinai Pension Plan uses the offset plan method of integration (Paper No. 25, Ex. 3, Duffy Affidavit, ¶ 4).

The Sinai Pension Plan has a target goal that at retirement an employee with 30 years of service will receive 50%–60% of his pre-retirement income allocated between the Plan's pension benefit and Social Security (*see* Paper No. 25 at 12; Ex. 3, ¶ 9; Ex. 6, ¶ 4). It also seeks to compensate employees with identical lengths of service and compensation at Sinai with the same pension benefits from Sinai without regard to their earning histories in non-Sinai employment (Paper No. 13 at 9; Ex. 1, ¶ 11).

### 2) *How Sinai Pension Plan Calculates Benefits*

The basic formula for computing retirement benefits is contained in Article 4 of the Plan (Paper No. 24, Ex. A setting forth Article 4 and amendments thereto in 1978 and 1983). Despite the amendments of Article 4, all parties appear to agree that there are several common key steps in the calculation relevant to this action. (*See* Proposed Pre-Trial Order at 3). They are quite simple on the surface. First, the Plan establishes the employee's "base pension" and subtracts from that amount the "estimated Primary Social Security Benefit." (*See* Paper No. 13 at 3; Paper No. 20 at 8; Proposed Pre-Trial Order at 3). That deduction is called the offset. Two other deductions may be made if applicable: 1) a deduction for not having worked 30 years, the period for which a full pension is calculated; 2) a deduction for early retirement. (*See id.*).

The plaintiffs challenge only the offset deduction and the methodology used to arrive at the offset figure, *i.e.*, the estimated Primary Social Security Benefit [hereinafter the estimated benefit].

### a) *Calculation Methodology*

From the base pension figure calculated under the formulae in the Plan is subtracted the estimated Social Security benefit, but the Plan is silent as to precisely how the estimated benefits will be calculated (Paper No. 25, Ex. 3, Duffy Affidavit, ¶ 5).

To arrive at the estimated benefit figure, the Plan computes the average monthly wage in the year of highest earnings in the last five years (Paper No. 20 at 8, 10). It then plugs that figure into a Table, prepared in 1976 by an actuarial consulting firm, William M. Mercer, Inc., which apparently is "typical of the type of table that actuaries use in the calculation of benefits under offset pension plans." (Paper No. 25, Ex. 3, Duffy Affidavit, Actuary, ¶ 5). (*See* Paper No. 20, Ex. B for TABLE).

The actuary constructed the Table to create an estimated earnings history for each beneficiary "by taking 1976 salaries and projecting backwards [to 1951], using a salary scale of a level 4% per annum increase in past wages." (Paper No. 25, Ex. 3, Duffy Affidavit at 5). In 1976, when the Table was created, the Social Security Administration "used a formula to determine the average monthly wage ... and then applied an [estimated] benefit formula to the [average monthly wage] to determine actual [benefits]." *Id.* at 3. The Table, which apparently has not been changed since 1976, calculates estimated Social Security benefits for "each of its 1976 current earnings points and for each year of birth in the table by applying the [Social Security Administration] formulae, previously described, to the table's estimated earnings history." *Id.* at 6.

The Plan enters the Table at the claimant's year of birth and moves to the figure representing his/her "average monthly wage." The table at that intersection re-

veals, what the Plan calls, the estimated benefit.[3]

Pursuant to Revenue Ruling 71–446, § 7.01, which prohibits a tax qualified pension plan from offsetting more than 83⅓% of the Social Security benefit, the Plan then calculates 83⅓% of the estimated benefit. That produces the offset figure which is subtracted from the "base pension" figure.

It is undisputed between the parties that the estimated benefit figure arrived at by the Plan using the above methodology will result, in most if not all circumstances, in a figure higher than the actual Social Security benefits received by the claimant. That situation reflects the fact that most Sinai employees covered by the Pension Plan have not "always been a covered employee under the Social Security Act." The Sinai Pension Plan, § 2.1(w), assumes by definition that an employee has had continuous employee coverage under the Act.

### 3) *Plaintiffs' Arguments Regarding the Defendant's Calculation of the Estimated Benefit*

The plaintiffs do not contest the defendants' right to effect an offset for Social Security benefits. They assert, however, that the offset used by these defendants is based on an arbitrary figure which has no relevance to the actual Social Security benefits received by the claimant and, in fact, no relationship to the way the Social Security Administration calculates, what it terms, "estimated benefits."

When the Social Security Administration computes "average monthly compensation" to arrive at its estimated benefits figure, it adds together all the claimant's earnings since 1951,[4] except for the lowest five years, and divides by the number of months in those years (Paper No. 25 at 13–14).

As the plaintiffs explain, "The consequence of using a broad range of annual incomes is that the average monthly compensation will be considerably less than the [average] monthly income received at the close of a worker's career." (Paper No. 20 at 15). Usually, at the end of a career, a worker's salary is higher than at the beginning of his career, due not only to raises, but also to inflation. Consequently, when the Social Security Administration calculates the average monthly compensation figure which then is inserted into its table to ascertain estimated benefits, it uses a system which averages out the lower and higher wages of the employee over the course of his career.

The defendants, on the other hand, use a system which focuses on the highest monthly income received by the employee in the 5 years before his retirement. In addition, the defendants' calculations assume that the employee has always worked under the coverage of the Social Security Act, an assumption which maximizes estimated Social Security benefits. It follows then that the average monthly wage figure used by the defendants to calculate the employee's estimated Social Security benefits always will be higher than the average monthly wage figure which the Social Security Administration uses to compute estimated Social Security benefits. A higher estimated average monthly wage figure results in higher estimated Social Security benefits.[5]

For the usual Sinai employee, the inevitable outcome of the interplay between the defendants' system and the Social Security Administration's system of calculating esti-

---

**3.** The Plan defines "Primary Social Security Benefit" as the *"estimated* Primary Security Benefit to which an eligible employee (*assuming he has always been a covered Employee under the Social Security Act* ) was or would be entitled upon reaching the age of sixty-five (65)...." (Emphasis supplied). (*See* Paper No. 2, Ex. A, The Sinai Pension Plan § 2.1(w)).

**4.** A date later than 1951 may be used in this calculation if the employee reached 62 years of age after 1978. 1 CCH Unemployment Insurance Reporter at 1015.

**5.** After the Social Security Administration plugs the annual monthly wage figure into its table to ascertain the estimated benefit figure, it may reduce that figure by 20% for early retirement. 1 CCH Unemployment Insurance Reporter at 1022. If no early retirement occurred, the "estimated benefit" will be approximately the same as the actual benefit received. *Id.* at 1020.

mated benefits is that the stream of Social Security income estimated and/or actually received by the employee will always be lower than the Plan estimates it will be.

### 4. Does the Plan Violate the ERISA Non-Forfeiture Provision?

Pursuant to 29 U.S.C. § 1053, "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age...." 29 U.S.C. § 1053(a) (Cumm.Supp.1976–83). To assure that " 'if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit'—... the concept[s] of ... nonforfeitable rights [is] critical to the ERISA scheme." *Alessi,* 451 U.S. at 510, 101 S.Ct. at 1899 citing *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980).

The Supreme Court in *Alessi* asked "what defines the content of the benefit that, once vested, cannot be forfeited?" 451 U.S. at 511, 101 S.Ct. at 1900. The Court answered that question by stating:

> "ERISA leaves this question largely to the private parties creating the plan. *That the private parties, not the Government, control the level of benefits is clear from the statutory language* defining non-forfeitable rights as well as from other portions of ERISA. ERISA defines a 'nonforfeitable' pension benefit or right as 'a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan.' 29 U.S.C. § 1002(19). In construing this definition last Term, we observed:
>
>> '[T]he term "forfeiture" normally connotes a total loss in consequence of some event rather than a limit on the value of a person's rights. Each of the examples of a plan provision that is expressly described as not causing a

forfeiture listed in [§ 1053(a)(3) ] describes an event—such as death or temporary re-employment—that might otherwise be construed as causing a forfeiture of the entire benefit. It is therefore surely consistent with the statutory definition of "nonforfeitable" to view it as describing the quality of the participant's right to a pension rather than a limit on the amount he may collect.' *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S., at 372–373 [100 S.Ct. at 1731]. Similarly, *the statutory definition of 'nonforfeitable' assures that an employee's claim to the protected benefit is legally enforceable, but it does not guarantee a particular amount or a method for calculating the benefit.* As we explained last Term, 'it is the claim to the benefit, rather than the benefit itself, that must be 'unconditional' and 'legally enforceable against the plan.' *Id.,* at 371 [100 S.Ct. at 1731]."

*Id.* at 511–12, 101 S.Ct. at 1900 (Emphasis supplied).

The defendants argue that because an employer is not required by law to provide any particular pension benefit, an employee cannot complain when he receives the benefit promised under an employer's plan. In effect, the defendants contend you cannot forfeit what you never had.

The plaintiffs retort that the logical endpoint of that rationale is that a pension plan could build into its method of computation a formula which could guarantee that no participant would ever receive a pension. Under such a rationale, they argue, every participant's right to *claim* a benefit, although it would be nonforfeitable, would also be ephemeral. To state the logical end result of such a rationale, they claim, shows that it truly violates the nonforfeitability rule.

■ To reiterate, what is nonforfeitable under ERISA is a claim to that part of a benefit under a pension plan which arises from the employee's service, and which is unconditional and legally enforceable against the plan. In short, what is nonfor-

feitable is a claim to vested benefits. *See, e.g., Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 376, 100 S.Ct. 1723, 1733, 64 L.Ed.2d 354 (1980) (terms "vested" and "nonforfeitable" are used synonymously in ERISA); *Stewart v. National Shopman Pension Fund*, 730 F.2d 1552, 1561–62 (D.C.Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 127, 83 L.Ed.2d 68 (1984) ("An employee is 'vested' in a portion of his benefit when he has a *nonforfeitable* right to a given percentage of his *accrued benefit.*") (emphasis in original); *Hummel v. S.E. Rykoff Co.*, 634 F.2d 446, 449 (9th Cir.1980) ("*vested* employee rights cannot be forfeited for any reason") (emphasis in original).

Therefore, what must be established herein by the plaintiffs is that the Sinai Pension Plan, by its method of calculating estimated Social Security benefits and offsetting those against the amount of pension benefits payable by the Plan, is somehow depriving the class members of *vested* pension benefits.

ERISA sets forth two basic vesting requirements: 1) that an employee's rights in his accrued benefit derived from *his own* contributions are immediately vested and nonforfeitable,[6] 29 U.S.C. § 1053(a)(1); 2) that an employee's rights to his accrued benefits derived from his *employer's* contributions are nonforfeitable when, at some time defined in the Plan, they vest. 29 U.S.C. § 1053(a)(2). Each Plan must incorporate one of three vesting schedules[7] set out in § 1053 of ERISA.

There is no contention herein that, on its face, the Plan fails to incorporate a minimum vesting schedule. The argument of the plaintiffs is that the offset used by the Plan, when it purports to integrate Social Security income with pension plan income, is so skewed that it causes at least a partial forfeiture of a participant's right to his vested benefits.

■ ERISA's purpose, among others, was to assure that the promise of a pension was fulfilled. S.Rep. No. 93–127, 93d Cong., 2d Sess., *reprinted in* 1974 *U.S. Code Cong. & Ad.News*, 4838. As stated in the Senate report accompanying S. 4, the Senate bill which eventually became part of ERISA, the legislation was intended to be:

> "... addressed to the issue of whether American working men and women shall receive private pension plan benefits which they have been led to believe would be theirs upon retirement from working lives. It responds by mandating protective measures, and prescribing minimum standards for promised benefits...."

*Id.*[8] Therefore, to the extent the pension plan is deceptive or seems to promise more than it delivers, it violates the intent of ERISA, if not its letter.

Integration was permitted under ERISA, not as a means to undermine the promise of a pension, but as a concession to the reality of the cost of such a "promise" to employers.

> "[ERISA] does not affect the ability of plans to use the integration procedures to reduce the benefits that they pay to

---

**6.** Sinai employees do not contribute to the Pension Plan (Paper No. 2, Ex. A, Pension Plan § 8.1).

**7.** ERISA establishes three alternative vesting schedules for employer contributions. Under the first, an employee with 10 years of service must have a "nonforfeitable right to 100% of his accrued benefits derived from employer contributions." 29 U.S.C. § 1053(a)(2)(A). Under the second, an employee with at least five years of service has graduated vesting rights whereby an increasing percentage of his accrued benefits become nonforfeitable each year. 29 U.S.C. § 1053(a)(2)(B). Under the third, a vesting for-

mula based on the sum of an employee's age and service is used. 29 U.S.C. § 1053(a)(2)(C).

**8.** During Senate debate on the ERISA conference report, the "promise" of a pension was also discussed. "I am happy to report that after long and numerous meetings of the conferees ... we are able to bring before the Senate a conference agreement which ... for the first time, will safeguard the pension expectations of American workers." Statement by Sen. Harrison A. Williams, Jr., Chairman, Senate Committee on Labor and Public Welfare (Aug. 22, 1974), 93d Cong., 2d Sess., 120 Cong.Rec. S 15737, *reprinted in* 1974 *U.S.Code Cong. & Ad.News*, 5177.

individuals who are currently covered when social security benefits are liberalized. Your committee, however, believes that such practices raise important issues. On the other hand, the objective of the Congress in increasing social security benefits might be considered to be frustrated to the extent that individuals with low and moderate incomes have their private retirement benefits reduced as a result of the integration procedures. On the other hand, your committee is very much aware that many present plans are fully or partly integrated and that elimination of the integration procedures could substantially increase the cost of financing private plans. Employees, as a whole, might be injured rather than aided if such cost increases resulted in slowing down the growth or perhaps even eliminat[ing] private retirement plans."

H.R.Rep. No. 93–807 at 69 (1974) *reprinted in* 1974 *U.S.Code Cong. & Ad.News,* 4696.

. As noted previously, integration as described by the Supreme Court in the *Alessi* decision is a process by which actual "income streams *available* to the retired employees" (emphasis supplied) are combined to create a benefit formula. 415 U.S. at 514, 101 S.Ct. at 1901. Thus, the total payment would be the same as promised, but the payment would not all come from pension funds. Or, as further explained by the *Alessi* Court, "[t]he individual employee remains entitled to the established pension level, but the payments received from the pension fund are reduced by the amount received. . . ." *Id.* at 516, 101 S.Ct. at 1903. Here, however, the artificial na-

9. ERISA does not address the operation of the offset method of integration. The Treasury Department, however, has established through regulation, *see* 26 C.F.R. § 1.401–3, and Internal Revenue Rulings, *see, e.g.,* Rev.R. 71–446 and Rev.R. 84–45, certain rules and regulations regarding the offset method. Neither party herein has challenged the regulations or the rulings as contrary to ERISA.

Treasury regulations are to be accorded considerable weight by the court, *see, e.g., Brewster v. Gage,* 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457 (1930); *Strick Corp. v. United States,* 714 F.2d 1194, 1197 (3d Cir.1983), *cert. denied,* 466 U.S.

ture of the offset reduces the total payment.

The Internal Revenue Service, in a recent revenue ruling, addressed just such a problem. *See* Rev.R. 84–45 (Paper No. 25, Ex. 5). The question presented was "[w]hether a defined benefit offset plan that uses estimated wages for an employee in determining that employee's old-age insurance benefit provided under the Social Security Act fails to satisfy . . . the minimum vesting requirements of section 411." Rev.R. 84–45.

Section 411 "replicates for IRS purposes ERISA's nonforfeiture provision, 29 U.S.C. § 1053(a)." *Alessi,* 451 U.S. at 517, 101 S.Ct. at 1903. Therefore, Revenue Ruling 84–45, interpreting the effect of the use of an estimated wage history on the nonforfeitability requirement, is instructive in the case at bar.[9]

In Rev.R. 84–45, the IRS first reiterated that no forfeiture occurs when pension benefits are offset by Social Security benefits actually received. When a pension plan calculates offsets based on estimated compensation, the IRS explained that the plan may or may not have violated the nonforfeitability requirements depending on the effect of the offset on previously accrued benefits. The IRS stated:

"In the case of an offset plan where offsets are calculated based on estimated compensation, the mere offset of social security benefits based on estimated previous compensation will not constitute an impermissible forfeiture to the extent that the offset limits the accrued benefit without causing a reduction in the ac-

971, 104 S.Ct. 2345, 80 L.Ed.2d 819 (1984). Although Revenue Rulings do not command quite the same deference, they "should be given weight as a statement of the meaning of the Regulations." *United States v. Northumberland Ins. Co., Ltd.,* 521 F.Supp. 70, 77 (D.N.J.1981).

Because in the area of offset method integration neither the statute nor case law describes the correct calculation procedures, this court will rely on relevant Treasury Regulations and the Revenue Rulings which govern the offset method as additional evidence of the intent of the statute.

crued benefit previously nonforfeitable. If a plan calculates offsets on the basis of estimated compensation, it is possible for a participant to suffer an impermissible forfeiture under section 411 of the Code. For example, it is possible, from one year to the next, for the estimated offset to increase more rapidly than the actual offset and more rapidly than the positive portion of the benefit formula. In such a case, a participant for whom the estimated offset is greater than the actual offset will suffer an impermissible forfeiture because the dollar reduction in the accrued benefit under the plan is not matched by actual benefits under social security or any other Federal or State law. Similarly, it also is possible for social security benefits to increase by a percentage (such as by a cost-of-living adjustment) that causes the estimated offset with respect to a participant to increase more rapidly than the actual offset. In this case, a participant for whom the estimated offset is greater than the actual offset will suffer an impermissible forfeiture because such participant's accrued benefit under the plan is decreased as a result of such increase in social security."

Rev.Ruling 84–45.

Therefore, what appears to be impermissible is a decrease in benefits already accrued and vested.

The defendants explain that Rev.R. 84–45 merely "provides that a plan participant must accrue a benefit every year while under a plan, which benefit must be determinable as if that year were the employee's year of retirement. if in any year an employee's total benefit is less than the total the prior year, it may be an improper forfeiture of a benefit." (Paper No. 25 at 17). Therefore, they conclude that the Sinai Pension Plan conforms to Rev.R. 84–45 because the benefits a claimant receives "under the plan benefit formula calculation performed after her last year of employment is greater than the benefit which would have resulted from performing such

a calculation in any prior year." (*Id.*, at 18 citing to Ex. 3, ¶ 11 of Duffy Affidavit).

That conclusion is stated by Kenneth Duffy, "a principal with Yaffe & Offutt Associates, Inc.[,] Compensation and Benefits Consultants in Baltimore, Maryland" (Paper No. 25, Ex. 3, ¶ 1 & ¶ 11), but he does not explain why or how he arrived at that conclusion.

It appears to this court that the pension plan described in Rev.R. 84–45 calculates its offset in much the same way as the Sinai Pension Plan. Both plans create an estimated earning history upon which they base their calculations of the amount of Social Security benefit the participant theoretically will receive. *Compare* Rev.R. 84–45, *with* Paper No. 25, Ex. 3, Duffy Affidavit ¶ 6. The pension plan in Rev.R. 84–45 was determined to have violated the nonforfeitability provision of 26 U.S.C. § 411 which, as stated previously, replicates ERISA's nonforfeiture provision.

Rev.R. 84–45 raises other questions directly related to the nonforfeitability issue. Specifically, that ruling sets out general rules applicable to plans which use estimated earnings histories. Although a plan "will not fail to satisfy the requirements of section ... 411 of the Code merely because the maximum offset under the plan is determined using an estimated wage history for some or all years before retirement ... (and therefore estimated old-age benefits)," it is required, as of December 31, 1983, to comply with all following rules:

"(1) The pre-separation or pre-retirement salary history (or pre-hire salary history) is estimated by applying a salary scale, projected backwards, to the employee's compensation (as defined in section 3.03 of Rev.Rul. 71–446) at separation or retirement (or compensation at hire) and the salary scale is either

(A) the actual change in the average wages from year to year as determined by the Social Security Administration, or

(B) a level percentage per year that is not less than six percent per annum.

(2) *A plan gives clear written notice to each employee of the employee's*

*right to supply actual salary history and of the financial consequences of failing to supply such history.* The notice must be given each time the summary plan description is provided to the employee and must also be given upon separation from service. The *notice must also state that the employee can obtain the actual salary history from the Social Security Administration.*

(3) The plan provides that the benefit for a participant will be adjusted to the offset based on an actual salary history for years previously estimated before separation from service (and an assumed post-separation or post-retirement compensation in accordance with section 11.-01 of Rev.Rul. 71–446 when applicable) if the participant supplies documentation of that history. A plan may provide that such documentation must be provided no later than a reasonable period of time following the later of the date of separation from service (by retirement or otherwise) and the time when the participant is notified of the benefit to which he or she is entitled.

The estimated wages may be used either only for years before employment with the employer or for all years before retirement or separation from employment."

Rev.R. 84–45, 1984 (emphasis supplied).

Under Rev.R. 84–45, "[o]ffset plans using estimated wages in determining old-age insurance benefits must be amended to comply with the requirements of [84–45].... The amendment must be adopted by the end of the first plan year beginning after December 31, 1983, and made effective as of the beginning of such plan year." Rev.R. 84–45, 1984.

There is no evidence in this record that the plan amendments contemplated by Rev.R. 84–45 have been adopted by Sinai. To the contrary, it appears that the Sinai Plan consciously and deliberately, through the definition of "Primary Social Security Benefit" in the Plan, prohibits the use of *actual* salary history in any instance in which an employee was not covered at all times under the Social Security Act, since by definition the Plan assumes that the employee has *always* been so covered.

While the desire of the plan sponsors to equalize pensions for people who work the same period of time for Sinai Hospital is a proper consideration in formulating benefit levels and while such a factor could be an *express* part of the formula or method for calculating benefits, it cannot be part of the offset in an integration. An integration deals with the source of funds used to pay an independently calculated level of benefit and is not intended under ERISA to be used to reduce artificially the level of benefits. In other words, the offset must bear a reasonable relationship to an actual payment from the source of funds to which the offset refers.

The place where the plan is deceptive is the definition of "Primary Social Security Benefit," (*See* Footnote 3) where it sets out a definition which bears no resemblance to the *actual* primary social security benefits. It is like defining an "orchid" as a "dandelion."

The conclusion this court has reached that the Sinai Plan violates the non-forfeiture provisions of ERISA is not undermined by *Edwards v. Wilkes-Barre Pub. Co. Pension Trust,* 757 F.2d 52 (3rd Cir.) *cert. denied* — U.S. ——, 106 S.Ct. 130, 88 L.Ed.2d 107 (1985). In that case, the court expressly declined to determine whether "calculations leading to pensions of a *de minimis* amount might be the equivalent of a forfeiture and prohibited by ERISA." *Id.* at 58, n. 7. Here, it appears that the reductions in the ostensible pension to the actual pension amount by the offset of illusory Social Security benefits brings at least some of the pensions close to the *de minimis* border. In any event, the *Edwards* case was not one which centered upon the operations of an integration system. Instead, *Edwards* involved the question of when, under the terms of the plan there involved, an .employee was to be deemed "terminated from employment" for the purpose of determining the amount of actual average annual compensations used

to compute pension benefits. The court in *Edwards* concluded that the plan trustees acted reasonably in interpreting the terms of the plan there to mean an employee was not terminated from employment during the uncompensated time he was out on strike. The use of such an interpretation of the provisions of the plan resulted in a calculation of actual average annual compensation, albeit a much lower actual average annual compensation then if the uncompensated strike time had not been included in the average.

In the present case, I repeat, the purpose of integration to combine actual income streams to arrive at a total retirement income has been frustrated by the use of an illusory Social Security benefit as an offset from the promised total retirement income. This constitutes, under the facts here, a violation of the non-forfeiture provisions of ERISA.

In view of this conclusion, the court deems it unnecessary to consider the remaining contentions of the plaintiffs.

An order will be separately entered reflecting the decisions explained herein.

### ORDER

The Court having considered the written and oral arguments of the parties, and having reviewed the exhibits and pleadings filed in this action,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. The class certified and defined by Order of October 4, 1984 is redefined as a class of current retirees and future retirees (current employees) of Sinai Hospital, Inc. who are or will be beneficiaries of the Sinai Pension Plan and who have had, are having, or will have their pensions reduced by an amount derived by using an estimated Social Security benefit which they actually received or will receive upon leaving the service of Sinai Hospital to retire.

2. The named plaintiffs representing the class are Florence McLean and Pinkie Ricks.

3. Defendants' application and use of estimated Social Security benefits in excess of actual Social Security benefits received at retirement violates the non-forfeitability provisions of ERISA, 29 U.S.C. § 1053(a).

4. Defendants, their successors, agents, employees, and all persons acting in concert with them are permanently enjoined from calculating and paying pension benefits by employing an estimated Social Security benefit which is higher than the actual Social Security benefit received by the participant at the time of retirement.

5. Defendants shall immediately recalculate the pension payments to which the plaintiffs and class members are entitled, consistent with the above paragraphs, using the actual Social Security benefit received at the time of retirement rather than an estimated Social Security benefit which is higher than that actually received.

6. Defendants shall immediately recalculate, for each plaintiff and class member, the correct pension payment, by replacing the estimated Social Security benefit which appears as line 4 on Schedule III of the Plan's calculation sheets with the actual Social Security benefit received at retirement, and shall pay the properly calculated amounts in the pension payments sent to plaintiffs and class members beginning with the second calendar month after the month in which this order is signed.

7. Defendants shall immediately calculate and pay in lump sums (the checks to be mailed no later than March 1, 1986) the pension amounts to which the plaintiffs and class members are entitled for all months prior to the month in which corrected payments are made in accordance with paragraph 6, based on the declaratory and injunctive relief which requires defendants to recalculate pension amounts by replacing defendants' estimated Social Security benefit with the actual Social Security benefit paid at retirement, including full legal interest as detailed in the next paragraph.

8. Defendants shall include, in the lump sum payments described in paragraph 7, the full legal interest computed daily from the dates of each prior payment which was

less than it should have been because of defendants' use of their estimated Social Security benefit rather than the actual Social Security benefit received, the interest to be compounded annually and the rate to be "equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of the fifty-two week United States Treasury bills settled immediately prior to the date of the judgment." (28 U.S.C. § 1961(a)).

9. Pursuant to 29 U.S.C. § 1132(g), plaintiffs may seek an order awarding attorneys' fees by filing a motion within thirty (30) days of the entry of this Order.