Rebecca DAMERON, on behalf of herself and all others similarly situated

v.

SINAI HOSPITAL OF BALTIMORE, INC.; Administrative Committee of Sinai Hospital of Baltimore, Inc.; Grace Pryor; Sinai Hospital of Baltimore, Inc. Pension Plan for Employees Covered Under the Collective Bargaining Agreement Between the National Union of Hospital and Health Care Employees, Division of R.W.D.S.U., AFL–CIO, and Its Affiliate Local District 1119 E, and Sinai Hospital of Baltimore, Inc.

Civ. A. No. M–83–2835.

United States District Court,
D. Maryland.

July 8, 1986.

Luther Blackiston, Legal Aid Bureau, Inc., Towson, Md., Gill Deford and Neal S. Dudovitz, Nat. Sr. Citizens Law Center, Los Angeles, Cal., for plaintiffs.

Leonard E. Cohen, Jeffrey Rockman and Frank, Bernstein, Conaway & Goldman, Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

The plaintiffs prevailed in this class action suit which claimed, *inter alia,* that the formula used by the defendants to establish the amount of the plaintiffs' pensions violated the nonforfeiture provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1053(a). *See Dameron v. Sinai Hospital of Baltimore, Inc.,* 626 F.Supp. 1012 (D.Md.1986). Pursuant to 29 U.S.C. § 1132(g), the plaintiffs have now moved for an award of attorneys' fees and costs (Paper No. 44). The defendants have filed an opposition (Paper No. 48) and the plaintiffs have filed a reply and several supplemental memoranda for more recently incurred fees (Paper Nos. 50, 56, & 61). No hearing is necessary to resolve this matter. Local Rule 6(G).

### Legal Analysis

**I. *Should attorneys' fees be awarded?***

Five factors are considered in determining whether an attorneys' fees award is appropriate in an ERISA case under 29 U.S.C. § 1132. These factors are:

"(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attor-

neys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions."

*Iron Workers Local No. 292 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980) (footnote omitted); *Tenneco, Inc. v. First Virginia Bank of Tidewater*, No. 82–1159, 4 E.B.C. 1344, 1345 (4th Cir.1983).

Application of the five *Bowen* factors to the facts of this case leads to the conclusion that this is an appropriate situation for attorneys' fees.

This court determined the defendants "consciously and deliberately" established a pension plan prohibiting the use of actual Social Security salary history for many employees to offset pension benefits they paid to workers. The result was that the plaintiffs did not receive the retirement benefits to which they were entitled. This court concluded that the pension plan's definition of primary Social Security benefit, which formed the basis of the defendants' calculation formula, was "deceptive, ... like defining an 'orchid' as a 'dandelion.'" *Dameron*, 626 F.Supp. at 1023. While this court has not found that the defendants acted in "bad faith," it has held that their actions were deliberately taken to reduce benefits through what could be labeled a subterfuge.

The defendants assert they do not meet the second factor because Sinai Hospital is a nonprofit institution. No assertion is made, however, that the defendants cannot afford to pay attorneys' fees or that to be forced to do so would cause serious financial hardship.

The decision of this court invalidating the defendants' pension plan will deter others from developing or continuing similar plans. An award of attorneys' fees will put other pension plans on notice that there is a financial risk in violating ERISA in the way Sinai did. Therefore, an attorneys' fees award will significantly enhance the deterrent value of this court's prior decision.

The plaintiffs clearly sought to benefit all participants of the challenged Sinai pension system and the defendants do not dispute this.

As to the fifth and final factor, the defendants assert it is not met because (1) the court did not find their legal position without merit, (2) the ruling was based on the court's interpretation of the law rather than the plaintiffs' arguments, and (3) the court ruled in favor of the plaintiffs on only one of six claims. The court found the defendants' legal position to be without merit to the extent necessary for the court's decision. Further, the court is never limited to the caselaw cited by the parties to a suit or to their interpretations of it. When the court looks beyond the pleadings or arguments of the litigants for applicable legal precedent to support its decisionmaking, it hardly means the court has rejected the legal position of the victorious party to a lawsuit. It merely indicates that the court is fulfilling its proper role by considering all relevant legal precedent. Finally, the court did not reject five of the six claims asserted by the plaintiffs. After concluding that the defendants violated the nonforfeiture provisions of ERISA, it was "unnecessary to consider the remaining contentions of the plaintiffs." *Dameron*, 626 F.Supp. at 1024.

## II. *Calculating attorneys' fees*

■ Once it has been determined that attorneys' fees are warranted, the court must decide what amount would be "reasonable." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1982). "[T]he applicable law for determining attorneys' fee awards in ERISA cases is analogous to the law on fee awards in other substantive areas of the law ... especially in civil rights matters." *Davidson v. Cook*, 594 F.Supp. 418, 421 (E.D.Va. 1984); *LeFebre v. Westinghouse Electric Corp.*, 549 F.Supp. 1021, 1030–31 (D.Md. 1982), *rev'd on other grounds*, 747 F.2d 197 (4th Cir.1982).

In calculating attorneys' fees awards, 12 factors have traditionally been examined:

"(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) attorneys' fees awards in similar cases."

*Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 n. 28 (4th Cir.), *cert. denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978). *See also Unemployed Workers Organizing Committee v. Batterton,* 477 F.Supp. 509, 515 (D.Md.1979).

■ A mere listing of the 12 *Barber* factors is inadequate as a basis for determining how large a fee award should be made. *Anderson v. Morris,* 658 F.2d 246, 248–49 (4th Cir.1981). The *Anderson* court stated that the district court must first ascertain the number of hours reasonably spent by counsel and multiply them by the "customary hourly rate." *Id.* at 249. This approach was determined to be "[t]he most useful starting point" in calculating a fee award in the *Hensley* decision as well. 461 U.S. at 433, 103 S.Ct. at 1939. *See also Blum v. Stenson,* 465 U.S. 886, 896–98, 104 S.Ct. 1541, 1548–49, 79 L.Ed.2d 891, (1984). The party seeking fees should provide the court with evidentiary material supporting the time spent and the hourly rates claimed. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. The amount reached under this formula is what courts refer to as the "lodestar" or guiding figure. *See, e.g., Vaughns v. Board of Education of Prince George's County,* 770 F.2d 1244, 1246 (4th Cir.1985).

■ Once this initial lodestar amount is determined, the court has the option of adjusting the figure upward or downward based upon the other *Barber* factors. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939. The court should briefly explain how each of these factors affect the award. *Anderson,* 658 F.2d at 249. An attorneys' fees request should not turn into a second major lawsuit, however. *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941.

The lodestar formula and the subsequent adjustment of it is made considerably more complicated when the plaintiff is considered to have "prevailed" and yet not succeeded on each claim for relief. *Hensley* addressed this issue directly by holding that claims based on "a common core of facts" or "related legal theories" should be viewed as a whole, with counsel receiving fees based on the "overall relief obtained...." *Hensley,* 461 U.S. 435, 103 S.Ct. 1940. Because this matter was examined so thoroughly in *Hensley* and because the question of the extent of the plaintiffs' success in the instant case has been raised by the defendants to justify a reduction in the fee award, it is instructive to review the relevant sections of the Court's decision in *Hensley.*

"In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants—often an institution and its officers, as in this case —counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.' ... In other cases the plaintiff's claims for relief will involve a

common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.... Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained....

There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment. This discretion, however, must be exercised in light of the considerations we have identified...."

461 U.S. at 434–37, 103 S.Ct. at 1941 (citations and footnotes omitted).

Several courts, including the Fourth Circuit, have since interpreted *Hensley,* illustrating the type of situations which are considered to involve a "common core of facts" and those which do not. For example, in *Willie M. v. Hunt,* 732 F.2d 383 (4th Cir.1984), the court held that litigation over the interpretation of a consent judgment was "not inextricably intermingled with the original claims" in the underlying class action lawsuit, and, accordingly, fees could not be obtained by the plaintiffs who did not prevail in that matter. 732 F.2d at 386.

In *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1279 (7th Cir.1983), the court noted that "a useful tool for making this determination (if a losing claim is sufficiently linked to the overall cause of action to warrant attorneys' fees) is to focus on whether the claims seek relief for essentially the same course of conduct." 723 F.2d 1279. Thus, the court found that plaintiff's unsuccessful claims for false arrest and excessive force against two arresting officers were distinct from her claims concerning the constitutionality of the city's strip search policy. Therefore, attorneys' fees were not available for these unsuccessful claims.

■ Three attorneys—Gill Deford, Neal Dudovitz, and Luther Blackiston—who are associated with Legal Aid or public interest law firms, represented the plaintiffs in this case. Among them, they seek compensation for 336 hours work (Paper Nos. 44 at 12; 50 at 12; 61 at 2).

The defendants, relying on *Hensley,* assert that not all these hours are reasonable because some were spent working on unsuccessful claims (Paper No. 48 at 4–5). Specifically, the defendants dispute hours spent on the following areas: (1) the opposition to the defendants' motion to dismiss Dameron herself as a named plaintiff; (2) the motion to reconsider dismissing Dameron; (3) the substitution of class representa-

tives in lieu of Dameron; (4) the opposition to the defendants' motion to alter or amend the judgment; (5) issues abandoned during the suit, *i.e.*, in the second cause of action in that complaint that defendants improperly reduced plaintiffs' benefits by applying an early retirement reduction factor, the third cause of action in the complaint that defendants illegally reduced after retirement benefits by including post-retirement Social Security cost-of-living increases in the offset; (6) issues relating to dismissed defendant Grace Pryor; and (7) the claim of a breach of fiduciary duty by any alleged fiduciary.

Upon examining these assertions in light of *Hensley* and succeeding cases, this court concludes that none of these factors warrant a reduction of the hours claimed by the plaintiffs. Specifically, the plaintiffs ultimately prevailed on the first four points disputed by the defendants. By Order of this court dated May 16, 1986, Ms. Dameron was re-included in the plaintiff class, "for the reasons set forth in pages 6 through 10 of the 'Memorandum in Support of Plaintiff Dameron's Motion for Clarification or Reconsideration.'" (Paper No. 53). The plaintiffs also prevailed in substituting new class members, and in their opposition to defendants' motion to alter or amend, which was unsuccessful (*id.*).

The plaintiffs should not be penalized, either, for dropping certain claims during the course of litigation. In June 1984, slightly less than one year after this suit was filed, the parties stipulated to the deletion of certain claims as well as to the dismissal of defendant Grace Pryor from the litigation (Paper No. 27). This was done early, and with the consent of the defendants. *Hensley* speaks only of claims on which the party seeking attorneys' fees did not *prevail*. It does not address claims abandoned before an adjudication of the case. The Federal Rules of Civil Procedure permit flexible notice pleading. Fed.R. Civ.P. 8(a); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). It is taken, almost as a given fact, that a case will change and take shape during the course of the application of the liberal discovery rules of the federal courts. The plaintiffs here reduced the time and fiscal burden on their opponents and this court by quickly dropping claims which did not merit further pursuit. There are few complex civil cases such as the one *sub judice* in which the legal theories do not alter as the parties gather information through discovery. To concur with the defendants on this point would mean, for example, that courts would be required to reduce attorneys' fees awards for the prevailing party for time spent preparing any initial complaint whenever that complaint was amended as allowed under Fed.R.Civ.P. 15. This ignores the "whole picture" approach to awarding attorneys' fees encouraged by *Hensley*. It would result in a nightmare of nitpicking by the court of each and every pleading in the docket file, or word in the trial transcript, upon completion of every ERISA case to find the missing claim. These already complex cases would, at the attorneys' fees stage, yield further rounds of legal battling of the magnitude explicitly discouraged in *Hensley*. See 461 U.S. at 437, 103 S.Ct. at 1941.

The plaintiffs cite a Ninth Circuit decision relying on *Hensley*, where the court refused to discount hours spent on dismissed defendants in making an attorneys' fee award. *See Probe v. State Teachers' Retirement System*, 780 F.2d 776, 785 (9th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986). ("Despite the release of the other defendants (five of the six originals) plaintiffs achieved the major relief they sought in this case ... [therefore] no reduction of fees is warranted."). Since the relief sought in the present case has clearly been achieved by the plaintiffs, defendants should not be entitled to a reduction in fees merely because the court did not base its conclusions on all the theories which the plaintiffs advanced to support their claim to the relief granted.

### A. The Lodestar—Hours and Rates

Each of the attorneys has filed affidavits stating the number of hours worked on this case. Those hours are: Deford, 253.75;

Blackiston, 64.75; Dudovitz, 28. The court has thoroughly reviewed these affidavits and concludes the amount of time spent on this case was reasonable. To reach this determination, the court has examined the hours cited in the context of the 12 *Barber* factors listed above, *supra* at 553–54. And while these factors are also taken into consideration when determining whether to further adjust the lodestar figure, they also help the court initially decide whether the hours worked were reasonable.

In the instant case, there is no doubt the issues were complex. Counsel were required to analyze Social Security calculation methodology, IRS determinations about pension plans and the ERISA/integration concept. To do so effectively required experience and skill in litigating ERISA matters, which as this court will outline in more detail later, plaintiffs' counsel here possessed. With the exception of some redrafting of interrogatories, there appears to have been no duplicative actions by counsel. The redrafting of the interrogatory questions by Luther Blackiston took up less than three hours and does not appear excessive given the nature, seriousness and complexity of this litigation. Moreover, the total amount of time spent on this case by plaintiffs' counsel amounts to slightly more than 43 eight-hour days, or just over six weeks. This is not excessive for a suit of this type which continued almost three years.

The next step in the calculation of the lodestar figure is to determine a reasonable rate of compensation for those hours spent on the case. An attorneys' fee award should be calculated in accordance with "prevailing market rates." *Blum v. Stenson*, 465 U.S. at 892, 104 S.Ct. at 1545. The fee award should not vary according to whether the prevailing party was represented by private counsel or a nonprofit legal services group. *Id.*

A question has been raised here by the defendants as to whether the plaintiffs' out-of-town attorneys will be entitled to higher out-of-town rates for their services. This issue is apparently unsettled in the courts. *Vaughns v. Board of Education of Prince George's County*, 598 F.Supp. 1262, 1280 (D.Md.1984), *aff'd*, 770 F.2d 1244 (4th Cir.1985). In *Sun Publishing Co., Inc. v. Mecklenburg News, Inc.*, 594 F.Supp. 1512, 1518 (E.D.Va.1984), the court offered the following view of the "prevailing rate" problem:

> "While as a general matter fee requests should be judged by the prevailing rates in the locality where the services are rendered, if a plaintiff acts reasonably in going elsewhere to find an attorney, for instance, because counsel with the requisite specialty and skill are not available locally, then the fee award should be based on the customary fees in the locality where adequate counsel are available."

To ascertain whether the class action plaintiffs acted "reasonably" in seeking Los Angeles area counsel for this matter, the court must examine the qualifications of these lawyers. Gill Deford is a 1974 graduate of the University of Virginia Law School and for the past 10 years has been a staff attorney in the Los Angeles office of the National Senior Citizens Law Center. NSCLC, with offices in Los Angeles and Washington, D.C., is funded by the Legal Services Corporation to provide assistance to attorneys representing the elderly poor. This assistance includes acting as lead counsel or co-counsel where necessary (Paper No. 44, Deford Affidavit, ¶¶ 2–3).

Deford has specialized in pensions, medicaid, Social Security and Supplemental Security Income (SSI) matters and lists four federal district court pension cases in which he has acted as lead counsel and four pension cases in the Ninth Circuit or the federal district courts in California in which he has acted as co-counsel (*id.* at ¶¶ 4, 7). He has represented the elderly poor in several non-pension cases as well. He also maintains he is regularly contacted "by attorneys from around the country" seeking assistance in federal litigation and has "spent a considerable part of my time discussing and suggesting strategies, procedural and substantive, to attorneys who

contact me." (*Id.* at ¶¶ 8–9). Based on contemporaneous daily records kept during the course of this litigation describing how he spent his time on the case, Deford asserts that $120 an hour is reasonable for all work done on this case in 1983; $130 for 1984 work and $140 for 1985 and 1986 work, totaling $31,200 for his lodestar (*id.* at ¶¶ 11, 14; Paper Nos. 50 at 9; 61 at 2).

Attached as an exhibit to Deford's affidavit is a survey of legal fees for the Los Angeles County area. (*See* Association of Legal Administrators, Los Angeles County, Orange County, Beverly Hills Bar Associations, *1985 Compensation and Benefits Survey Report* (Oct. 1, 1985); Deford Affidavit, Exh. A). The average hourly rate for partners with the experience of Deford and Neal Dudovitz (whose background is discussed, *infra*) is $155. (*Id.* at 22–24). Deford has also attached to his affidavit several unpublished opinions in which the court has awarded him attorneys' fees. Deford's fees have ranged from $70 an hour in 1978 to $110 in 1982. He also states he received a court-ordered fee award of $140 per hour for 1985 work. (Deford Affidavit, ¶ 13).

Dudovitz, the other out-of-town lawyer, is a 1973 graduate of Northeastern University School of Law. Since 1975 he has been with NSCLC, first as a staff attorney, then in 1980 as directing attorney of the Los Angeles office and in 1985 as deputy director of the program (Dudovitz Affidavit, ¶¶ 1–5). He has specialized in private pensions and health law. He lists 6 private pension cases in federal district or federal circuit courts in which he served as either lead counsel or co-counsel (*id.* at ¶¶ 5–6). He has also represented *amicus curiae* in the Supreme Court in three pension cases, including *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), which was relied upon by this court in reaching the merits of the underlying dispute in this action (*id.* at ¶ 7).

Dudovitz stated that he served as co-counsel in this matter handling certain specific aspects of the case as listed in his hourly breakdown but also served as an advisor and strategist. These hours, he maintains, have not been included in his total (*id.* at ¶¶ 9–10).

Dudovitz seeks $130 per hour for hours he worked in 1983 on this case; $140 for 1984 hours and $150 for 1986 hours (*id.* at ¶ 10). He bases these rates on the 1985 survey attached to the Deford Affidavit; fee awards given by other courts for similar cases and awards granted to him by other courts of $120 an hour for 1982 and 1983 work (*id.*).

It is clear that these two attorneys have extensive backgrounds and experience in senior citizen litigation matters in general and pension plan issues in particular. It was reasonable for them to be brought into this case which, as already noted, required unique skills and knowledge. This is underscored by the declaration of Alfred Sigman, a California attorney specializing in ERISA matters. He has sought the assistance of NSCLC and Deford and Dudovitz on regular occasions and has been co-counsel with Dudovitz on two pension cases. He called the two attorneys "among the most effective legal advocates for pension plan retirees, participants and beneficiaries in the nation." (Paper No. 50, Sigman declaration, ¶¶ 1, 5, 7). He further stated "there are very few attorneys in the country who are able and willing to undertake representation of retirees in a case like *Dameron*." (*Id.* at ¶ 8). He noted that the hourly fee sought by these lawyers was within the range of compensation charged by experienced pension attorneys in Los Angeles and other major cities (*id.*). Accordingly, under the *Sun Publishing* decision it would be appropriate to look to the prevailing rate in the Los Angeles area when calculating awards for these attorneys. There is no dispute that the rates cited by plaintiffs' attorneys for the Los Angeles area are reasonable. Therefore, Los Angeles counsel will be paid at their requested hourly rates under this award.

There is one exception to the hourly rate in Deford's case, however. He lists a total of 21.75 hours of travel time between Los Angeles and Baltimore, apparently to make

appearances in court. Six of those hours, presumably while sitting on an airplane, were spent in preparation for oral argument. The court in the *Sun Publishing* decision ruled that to pay an attorney top dollar for travel time is unreasonable. 594 F.Supp. at 1520. "Ordinarily, travel time should be billed at a substantially lower than usual rate," *id., citing Younger v. Glamorgan Pipe & Foundry Co.,* 418 F.Supp. 743, 794 (W.D.Va.1976), *vacated and remanded on other grounds,* 561 F.2d 563 (4th Cir.1977); *Steinberg v. Carey,* 470 F.Supp. 471, 479–80 (S.D.N.Y.1979).

The *Sun Publishing* court determined $25 an hour to be a reasonable fee for travel time, subtracted it from the $120 an hour attorneys' fee award and multiplied it times the 175 hours listed for travel. It then reduced the overall award by that amount, or $16,625.

█ Here, Deford is entitled to his full fee award for the six hours in transit which were spent preparing for oral argument. He seeks $120 an hour for 1983 work, which included eight hours of non-working travel. Applying the *Sun Publishing* formula, Deford's 1983 fee should be reduced by $760.00 and his 1984 fee of $130 an hour which included 7.75 hours of non-working travel should be reduced by $813.75.

█ A third attorney, Luther Blackiston of the Legal Aid Bureau in Towson, Maryland, has also submitted an affidavit in connection with his fee request. Blackiston is a 1972 graduate of the University of Maryland Law School and has been with Legal Aid since 1971, beginning as a clerk and later as a staff attorney (Blackiston Affidavit, ¶¶ 1–5). He spent four years handling a number of cases including 22 Social Security actions in federal court. He does not describe, however, the extent of his duties while "handling" cases. He did state he was co-counsel in one nationwide class action under the Social Security Act at that time (*id.* at ¶ 6). Between 1979 and 1983, he was managing attorney of Legal Services for Senior Citizens of Baltimore County, Legal Aid Bureau. He was responsible for a general caseload includ-

ing Social Security matters. He resumed this post again in 1985, apparently after funding for this project, which was cut in 1983, was restored (*id.* at ¶¶ 7–9).

Blackiston cites prior experience in one pension case in which Deford served as lead counsel. He is also Chairman of the Maryland State Bar Association's SubCommittee on Law and the Elderly and offers consultation services to bar members seeking help in providing legal assistance to the aged (*id.* at ¶¶ 10, 12). He seeks $130 per hour for work done at various times between 1983 through 1986. He does not state on what he bases this figure (*id.* at ¶ 13).

The defendants also protest Blackiston's $130 an hour fee as "excessive in light of his role in this litigation which was primarily as local counsel," and because the rate, in defendants' view is out of line with prevailing Baltimore rates (Paper No. 48 at 8). A current survey of hourly fees of local law firm partners submitted by the defendants, however, indicates that Blackiston's current fee request is not out of line in comparison to partners at the city's larger law firms. Certainly, with Blackiston's many years of experience, his fees would be compared to those of partners' fees.

Two aspects of Blackiston's fee request do trouble the court, however. First, it is apparent from the affidavits submitted that Blackiston's litigation experience in the pension area is far less extensive than that of either of his co-counsel. Further, Blackiston does not differentiate between his fee request for 1983 and for the ensuing years spent on this litigation. The court will take judicial notice of the fact that inflation has slowed in recent years; nonetheless, in 1982, just the year before this case began, Deford was receiving $110 an hour in fee awards, presumably based on Los Angeles are prevailing rates.

In *Blum,* the Supreme Court stated that, "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevail-

ing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." 465 U.S. at 895–96 n. 11, 104 S.Ct. at 1547 n. 11.

Unlike his California colleagues, Blackiston has not done this. In the *Vaughns* decision, Judge Kaufman, citing a 1984 Baltimore Business Journal Survey, determined that the salary range for senior partners in this region was in the $100–$150 an hour range. *Vaughns,* 598 F.Supp. at 1281 and n. 36. The defendants have submitted a 1986 update of that survey, which appears to indicate a partner payment range of $100 to $225 without citing how many years of experience merit the higher rate (Paper No. 48, Exh. 3).

Although Blackiston's requested rates are not, in this court's view, out of line with Baltimore's legal rates, there is concern the amount sought during the early stages of this litigation is excessive. Accordingly, Blackiston's rates for the 14.5 hours he worked on this case in 1983 will be reduced to $120 an hour. The remainder of his fee request will remain the same.

## B. *Adjustment of the Lodestar*

██ An enhanced award is sometimes justified when granting attorneys' fees requests. *Hensley,* 461 U.S. at 434–35, 103 S.Ct. at 1940; *Blum,* 465 U.S. at 896–98, 104 S.Ct. at 1548–49. In the recent *Blum* decision, however, the Supreme Court made it clear that enhancement would be the exception rather than the rule.

> "[A]n upward adjustment (is warranted) only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.' "

*Id.*

The plaintiffs here seek an upward adjustment of 25 percent to the lodestar. The defendants assert it is not warranted in this case. They assert that (1) the novelty and complexity of this case is already reflected in the lodestar, (2) they are not private, unsalaried attorneys who lost other clients while undertaking to represent these plaintiffs, and (3) there was nothing exceptional about the plaintiffs' legal representation here (Paper No. 48 at 9–10).

The plaintiffs have not convinced the court, under the *Blum* standard, that an upward adjustment of 25 percent is warranted. Many of the 12 *Barber* factors have already been considered in determining the reasonableness of the fee award, and they need not be repeated.

Those which have not yet been considered, however, will be discussed briefly and are the rationale for a smaller upward adjustment of 10 percent of the lodestar. The plaintiffs cite that the NSCLC has only five attorneys. Their willingness to accept this difficult and novel case precluded them from addressing other legal problems of concern to their elderly constituency. They took a calculated risk that the successful litigation of this novel issue would indirectly help other pensioners in the same or a similar position and help clarify the law on this point. If they had chosen not to take this case, it is very unlikely that the plaintiffs could have found other counsel willing to accept it. These attorneys accepted this case with absolutely no guarantee they would receive any money for doing so. All of these factors should be rewarded, not merely to acknowledge the actions of these attorneys in taking this case, but to encourage other attorneys to "continue offering legal representation in undesirable and difficult ERISA litigation for non-paying plaintiffs." *McDaniel v. National Shopmen Pension Fund,* No. C83–1484C, slip op. at 7 (W.D.Wash., Apr. 4, 1986).

Therefore, the lodestar fees to be awarded to plaintiffs' counsel in this matter are as follows:

Deford

1983—$120 an hour

| | | |
|---|---|---|
| 32.75 hours × $120 | = | $ 3,930.00 |
| 8 hours × ($120–$25)/hour | | – 760.00 |
| (reduced for travel) | | $ 3,170.00 |

1984—$130 an hour

| | | |
|---|---|---|
| 139.50 hours × $130 | = | $18,135.00 |
| 7.75 hours × ($130–$25)/hour | | – 813.75 |
| (reduced for travel) | | $17,321.25 |

Deford

1985—$140 an hour
16.50 hours × $140 = $ 2,310.00

1986—$140 an hour
65 hours × $140 = $ 9,100.00

Total $31,901.25

\* \* \* \* \*

Dudovitz

1983—$130 an hour
3.50 hours × $130 = $ 455.00

1984—$140 an hour
8.50 hours × $140 = $ 1,190.00

1986—$150 an hour
16 hours × $150 = $ 2,400.00

Total $ 4,045.00

\* \* \* \* \*

Blackiston

1983—$120 an hour
14.50 hours × $120 = $ 1,740.00

1984—$130 an hour
37 hours × $130 = $ 4,440.00

1985—$130 an hour
1.25 hours × $130 = $ 162.50

1986—$130 an hour
12 hours × $130 = $ 1,560.00

Total $ 7,902.50

The total lodestar is $43,848.75 with the 10 percent upward adjustment of $4,384.87. The total fee granted will be $48,233.62.

The 10 percent adjustment shall be awarded as follows:

| | |
|---|---|
| Deford: | $3,190.12 |
| Dudovitz: | $ 404.50 |
| Blackiston: | $ 790.25 |
| | $4,384.87 |

The plaintiffs' costs of $867.70, unchallenged by the defendants will also be awarded.

Accordingly, it is this 8th day of July, 1986, by the United States District Court for the District of Maryland, ORDERED:

1. That the plaintiffs' motion for attorneys' fees is hereby GRANTED.

2. That the defendants are hereby ordered to pay plaintiffs' attorneys $48,233.62 in fees and an additional $867.70 within forty-five (45) days of the date of this Order.