**J. Christopher HENDERSON, Plaintiff,**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant.**

**Civ. A. No. 3:87–489–16.**

United States District Court, D. South Carolina, Columbia Division.

June 5, 1989.

Thomas E. McCutchen, Dick Watson, Columbia, S.C., for plaintiff.

Betsy Carpentier and H. Simmons Tate, Jr., Columbia, S.C., for defendant.

## ORDER

HENDERSON, District Judge.

This matter is before the Court on cross-motions for summary judgment and for attorney's fees. For the reasons set forth below, the Court (1) grants the defendant's summary judgment motion in part and denies it in part; (2) denies the plaintiff's summary judgment motion *in toto;* and (3) denies both parties' motions for attorney's fees. Accordingly, the Court directs that final judgment be entered in favor of the defendant.

The following facts are not in dispute. The plaintiff has been a partner in the law firm of Nelson, Mullins, Riley & Scarborough ("Law Firm") since 1983. All partners and full-time employees of the firm are covered under a long-term disability insurance plan provided by the defendant

insurer. The plaintiff, who has a history of coronary problems commencing with a heart attack in 1982, was hospitalized on October 29, 1985, complaining of tightness in his chest. He was released two days later but was readmitted with the same complaint on November 2, 1985. He was discharged four days later. On November 7, he was hospitalized for six days because of unstable angina. He was released on November 13 and sent home for further convalescence. He returned to work on December 4 and continued to work until December 23 when he and his family went to visit his wife's mother for the holidays. He returned to Columbia on December 28 or 29 and worked part of the day on December 30. At 4:00 a.m. on December 31, 1985, the plaintiff suffered a heart attack and was hospitalized until January 7, 1986. He resumed part-time work on January 29, 1986, and has continued to work since that time.

Sometime in 1986, when it was clear the plaintiff was unable to work full time, he and his law firm reached an agreement under which he was to work part-time and receive a salary in lieu of a share in the partnership's earnings. He had already received his full partnership share for the year 1985.

On May 20, 1986, the plaintiff completed an "Application for Disability Benefits" and submitted it to the defendant. Under the disability policy provided by the defendant, a disabled insured is entitled to receive disability benefits at the end of a 180–day "elimination period" and the amount of benefits is computed on the basis of his earnings during the calendar year preceding the year in which he becomes disabled.

On July 11, 1986, the defendant sent the plaintiff notice that his claim had been approved, together with checks for the period from April 28 to June 28, 1986. The amount of the benefit checks was based on the plaintiff's average income during the year 1984. On July 17, 1986, the plaintiff returned the checks to the defendant accompanied by a letter explaining that since he did not become disabled until January 1, 1986, at the earliest, he did not become eligible for benefits until June 30, 1986. He also informed the defendant that, as his disability began in 1986, the amount of his benefits should be based on this 1985 income. Over the next several months, the parties were in frequent communication regarding this dispute. On October 1, 1986, the defendant wrote the plaintiff informing him its position was unchanged.

In February 1987, the plaintiff instituted this action alleging causes of action against the defendant for breach of contract, bad faith refusal to pay benefits and intentional infliction of emotional distress. The plaintiff asserted the defendant improperly calculated his benefits because his disability did not commence until 1986. In its answer, the defendant adhered to its earlier position that the plaintiff became disabled in 1985 and that his benefits should therefore be based on his 1984 earnings.

By Order filed November 25, 1987, the Court granted the defendant's first summary judgment motion in part, holding the plaintiff's claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* The Court denied the defendant's motion, however, insofar as it sought judgment as a matter of law that the plaintiff was disabled during 1985.

The plaintiff subsequently amended his complaint to state a claim under ERISA, alleging causes of action for recovery of benefits under ERISA, for a declaratory judgment and for breach of fiduciary duty. All three causes of action challenged the defendant's determination that the plaintiff became disabled in 1985 and asserted, instead, that the disability began in 1986. In addition, the amended complaint maintained that the plaintiff has been totally, rather than residually, disabled since 1986 and, consequently, is entitled to receive benefits for total, rather than residual, disability. In its amended answer, the defendant again took the position that the plaintiff became disabled in 1985 and that his benefits should therefore be computed on the basis of his 1984 income. The defendant also denied the plaintiff is entitled to

benefits for total disability and asserted a counterclaim to recover excess payments allegedly made to the plaintiff. After the amended pleadings were filed, the defendant renewed its motion for summary judgment on the plaintiff's claims and its own counterclaims. By Order filed May 11, 1988, the Court granted the defendant's motion as it related to the plaintiff's claim for total disability but denied the motion in all other respects.

The plaintiff then moved for summary judgment on his claim for disability benefits, asserting that as a matter of law his disability commenced on January 1, 1986. On May 16, the defendant renewed its motion for summary judgment, asserting that the plaintiff became disabled on either October 30, 1985, December 31, 1985, or July 1, 1986. By order dated May 20, 1988, the Court denied the defendant's motion *in toto* and granted the plaintiff's motion in part, holding that he was not disabled as of October 30, 1985, and remanded the matter to the administrator for a new determination.

By letter dated January 24, 1989, the administrator made a new determination, concluding that the plaintiff "first became disabled so as to satisfy the elimination period staring [sic] on December 31, 1985." *See* Plaintiff's Exh. A at 1. The administrator found that the plaintiff became "totally disabled" when he suffered his December 31, 1985, heart attack and that total disability continued until he returned to work "on a limited basis" in January 1986. *Id.* at 2. The administrator further found that the plaintiff was continuously disabled from the time he returned to work on January 29, 1986, through the end of December 1986 because during that period he was "restricted to working on a part-time basis" and because his "earning records, although confusing, do reflect a loss of earned income for this period." *Id.*

On March 13, 1989, the plaintiff moved for summary judgment, asserting he is entitled to judgment as a matter of law on the following issues: (1) he is currently residually disabled; (2) his period of residual disability began no earlier than January 1, 1986; (3) his disability benefits should be calculated on the basis of his 1985 earnings; and (4) his benefits should have commenced no earlier than July 1, 1986. In addition, the plaintiff has moved for attorney's fees under 29 U.S.C. § 1132(g)(1).

On April 4, 1989, the defendant filed a cross-motion for summary judgment on the ground that it is entitled to judgment as a matter of law that (1) the plaintiff's disability began on December 31, 1985; (2) the plaintiff was continuously disabled and therefore his elimination period ran from that date until June 28, 1986; (3) the plaintiff's disability ended on December 31, 1986, entitling the defendant to a refund of all benefits paid after that date; and (4) the defendant is entitled to a refund of benefits paid before June 28, 1986, because the elimination period did not end until that date. The defendant also moves for attorney's fees under 29 U.S.C. § 1132(g)(1). The Court considers the summary judgment and attorney's fees motions separately.

## I.

■ First, the Court considers the parties' motions for summary judgment. Before addressing the merits of the parties' positions, the Court clarifies its role in the present proceeding. In its May 20, 1988, order, the Court stated:

> In reviewing an ERISA administrator's determination of benefits, the Court is not permitted to make a *de novo* determination or substitute its judgment for that of the administrator, but may consider only those matters before the administrator. *Berry v. Ciba–Geigy Corp.*, 761 F.2d 1003, 1007 (4th Cir.1985). The Court may not consider new theories or evidence not before the administrator. *Id.; Brown v. Babcock*, 589 F.Supp. 64, 71–72 (S.D.Ga.1984). Thus, the sole issue now before the Court is whether the defendant's determination of the plaintiff's benefits is arbitrary and capricious, that is, whether it is based on a clearly erroneous construction of the contract or is unsupported by substantial evidence. *Berry*, 761 F.2d at 1007.

Order of May 20, 1988, at 5. Since this matter was last before the Court, however, the United States Supreme Court has clarified the standard under which courts are to review benefit determinations by plan administrators. In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that such a determination is "to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at ——, 109 S.Ct. at 956, 103 L.Ed.2d at 95. Because there is no evidence that the plan here provides for such discretion or deference, the Court must review the administrator's determination *de novo*. In conducting this review, the Court is guided by principles of trust law, *id.* at ——, 109 S.Ct. at 953, 103 L.Ed.2d at 92, and construes the terms of the plan without deferring to either party's interpretation, *id.* at ——, 109 S.Ct. at 954, 103 L.Ed.2d at 93. Although *Bruch* alters the standard by which the Court reviews a plan administrator's determination, it does not affect the scope of the Court's review, which remains limited to those issues decided by the administrator. *See Berry*, 761 F.2d at 1007. Because of its limited review, the Court may now properly consider only whether the administrator was correct in determining that the plaintiff's disability began on December 31, 1985, that the elimination period began on that date, and that the plaintiff was continuously disabled from that time until the end of 1986. The Court may not decide when or if the plaintiff subsequently ceased to be residually disabled under the policy.[1] In light of the policy provisions and the undisputed facts as set forth above, the Court finds that the defendant is entitled to judgment as a matter of law under Rule 56(c) of the Federal Rules of Civil Procedure because under the undisputed facts the plaintiff's disability commenced on December 31, 1985, the

elimination period ran for 180 days from that date and the plaintiff remained disabled through the end of 1986.

■ Eligibility for disability benefits under the Law Firm's disability insurance policy is determined pursuant to a scheme derived from a number of policy provisions. Under the policy, a disabled insured becomes eligible for disability benefits at the end of an "elimination period" which is defined as "a period of consecutive days of total and/or residual disability for which no benefit is payable." The elimination period is shown in the policy specifications and begins on the first day of total or residual disability." Policy at L.DEF.2.2.3. The policy specifications provide for an elimination period of 180 days. Policy at L.PS. 1.2. An insured becomes "totally disabled" when "he cannot perform each of the material duties of his specialty in the practice of law." Policy at L.DEF.2.5. An insured is "residually disabled" if he,

> while unable to perform all of the material duties of his regular occupation on a full-time basis due to sickness or injury, is
>
> a. performing at least one of the material duties of his regular occupation on a part-time basis, and
>
> b. earning currently at least 20% less per month than his indexed pre-disability earnings due to that same sickness or injury.

Policy at L.BEN.4.18. The amount of benefits is "60% (benefit percentage) of basic monthly earnings." Policy at L.PS.1.1. For partners,

> "Basic monthly earnings" means the insured partner's average monthly earnings as figured:
>
> a. from the partnership federal income tax return for the calendar year just prior to the date total or residual disability begins; or

---

1. In his January 24, 1989, letter, the administrator expressly stated: "When matters regarding the date of disability are resolved, we will recalculate our benefit payments for 1986, and will also make a determination on what the correct benefit payments should be for 1987 and 1988."

As the administrator impliedly recognized, the Court's decision on the date of disability should enable the administrator and the parties to determine with certainty the duration of the plaintiff's residual disability and the amount of benefits to which he is entitled.

b. for the period that the insured has been a partner if the insured was not a partner during the year for which the most recent partnership federal income tax return was filed.

Policy at L.PS.1.2. Under these provisions, it is clear that the plan administrator's determinations are correct.

The plaintiff became totally disabled on December 31, 1985, when he suffered his last heart attack and was hospitalized, because it is undisputed that at that time he was unable to "perform each of the material duties of his specialty in the practice of law." *See* Deposition of Dr. Jeffrey Z. Brooker at 65. The plaintiff remained totally disabled, that is, unable to perform each of his material duties, until his release from the hospital or shortly before. *See id.* At that time he ceased to be totally disabled, but from that time until at least the end of 1986 he was unable to perform "all of the material duties of his regular occupation on a full-time basis," and "was performing at least one of the material duties of his regular occupation on a part-time basis." Thus, he was residually disabled from the date of his hospital release until the end of the year if during that time he was also "earning currently at least 20% less per month than his indexed pre-disability earnings." The only reasonable inference from the evidence before the administrator and this Court is that he was.

■ During 1986, the plaintiff's "indexed pre-disability earnings" were $9,226.15.[2] Thus, in order to have been residually disabled during this period, the plaintiff must have been earning at least 20% less than that amount, or no more than $7,380.92 per month. The evidence demonstrates that the plaintiff's income for all of 1986 was $86,407.00. *See* Defendant's Exh. 4. Not all of this income, however,

was "earnings" as that term is used in the policy. The Law Firm's partnership agreement, as amended July 1, 1986, provides that the plaintiff "should be entitled to be paid the full amount to which he was previously entitled during the initial six months of his disability, i.e., January 1 through June 30, 1986, and sixty (60%) percent thereafter." Exh. 6 at 2. For the first half of 1986, therefore, the plaintiff was paid a total of $54,004.375, or $9,000.729 per month, while during the second half of the year he was paid a total of only $32,402.625, or $5,400.437 per month. The Law Firm determined the plaintiff's salary in this way because the plaintiff "became forty (40%) percent permanently and partially disabled on or about January 1, 1986, but was entitled to income payment by the firm during the 180 day (six months) elimination period required by Paragraph 10 of the Agreement, as amended, and to a reduced income draw after that period." Exh. 6 at 1. Paragraph 10 of the Law Firm's partnership agreement, as amended on January 1, 1984, relates to the firm's disability insurance and provides in part:

During the first ninety (90) days of the one hundred eighty (180) day Elimination Period, the disabled partner shall retain his full percentage interest in the firm, and shall be entitled to all income and entitlements and be responsible for all obligations in accordance therewith. During the Second ninety (90) days thereof he shall be entitled to 75% of normal income and entitlements established prior to the onset of his disability.

Defendant's Exh. 10 at 2. The language cited from the two partnership agreement amendments makes it clear that the Law Firm, including the plaintiff who signed the amendments, intended that the first six months of 1986 be considered as a part of the elimination period and that any income

---

**2.** "Indexed pre-disability earnings means the insured's basic monthly earnings in effect just prior to the date his disability began adjusted by 3% on the July 1st following one full calendar year during which the insured has been continuously disabled. These earnings will be adjusted each following July 1st to a maximum of five adjustments." Policy at L.BEN.4.18. Thus, plaintiff's indexed pre-disability earnings for

1986 were $9,226.1466, the amount of his monthly income in 1985 just prior to the onset of his disability. *See* Defendant's Exh. 3. Under the policy definition just quoted, the amount of the indexed pre-disability earnings is to be adjusted by 3% on July 1, 1987, and on July 1 in each of the following four years that the plaintiff continues to be disabled.

received during that time by the plaintiff over sixty percent of his previous "earnings" be considered as an insurance supplement rather than earnings which would have delayed the start of the elimination period.

The plaintiff does not appear to challenge the determination that he was disabled during the first six months of 1986,[3] but he does set forth two other arguments in opposition to the administrator's interpretation.

■ First, the plaintiff asserts that whether he was ever totally disabled "has no bearing on the calculation of residual benefits under the definition of Basic Monthly Earnings, but "only the time of the commencement of *residual* disability, which could not have occurred until sometime in 1986 ... has any meaning for purposes of the definition of Basic Monthly Earnings." This is so, according to the plaintiff, because "there is nothing in the definition of Basic Monthly Earnings or anywhere else in the policy that indicates that the defendant is permitted to 'tack' successive periods of total and/or residual disability for purposes of determining the calendar year basis, as mandated in the definition of Basic Monthly Earnings." While it is true that the policy definition makes no mention of "tacking" successive periods of total and residual disability, the Court finds that omission immaterial. The policy permits such tacking to determine the 180–day elimination period at the end of which an insured is entitled to benefits. *See* Policy at L.DEF.2.2.3. In addition, the policy defines "Basic Monthly Earnings" as the insured partner's average monthly earnings ... for the calendar year just prior to the date total or residual disability begins." The Court sees no reason why the phrase "total or residual" should require that, where, as here, the elimination period consists of a period of total disability followed by a period of residual disability, the date on which residual disability begins should determine the amount of the monthly earnings. The only reasonable in-terpretation of this phrase is that basic monthly earnings should be based on the average monthly earnings in the year preceding the start of whatever disability triggers the elimination period. In this case, the elimination period began with the onset of the plaintiff's total disability on December 31, 1985.

The plaintiff also argues that "[a]t best, a review of the definitions of the Elimination Period and Basic Monthly Earnings and the other provisions of the defendant's policy in the context of the facts of this case, leads to the conclusion that the defendant's policy is ambiguous as to whether the plaintiff's benefits should be based on his 1985 or his 1984 income." The plaintiff further contends that under South Carolina case law, the ambiguous policy language must be construed against the defendant insurer which drafted the policy. The Court rejects this argument as well, finding South Carolina insurance and contract law inapplicable.

In *Bruch*, the Supreme Court stated: "We have held that courts are to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" 489 U.S. at ——, 109 S.Ct. at 954, 103 L.Ed.2d at 92 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987)). In developing this federal common law, courts should be "guided by principles of trust law." *Id.* Under the law of trusts, "courts construe terms in trust agreements without deferring to either party's interpretation." *Id.* at ——, 109 S.Ct. at 954, 103 L.Ed.2d at 93. Thus, "[t]he terms of trusts created by written instruments are 'determined by the provisions of the instrument as interpreted in light of all the circumstances and such other evidence of the intention of the settlor with respect to the trust as is not inadmissible.'" *Id.* (quoting Restatement (Second) of Trusts § 4 comment d (1959)). If there is any ambiguity in the policy provisions here, it lies in interpreting the definition of "residual disability" to determine whether during the first half of 1986

---

3. The plaintiff's only stated position in this regard is that "plaintiff's residual disability cannot be said to have begun any earlier that January 1, 1986."

the plaintiff was "earning currently at least 20% less per month than his indexed pre-disability earnings" so as to be residually disabled during that period. As the Court has already determined, the only reasonable conclusion to be drawn from the available evidence is that the parties intended that an insured under such circumstances be considered residually disabled.

## II.

 Next, the Court considers the parties' motions for attorney's fees under 29 U.S.C. § 1132(g)(1). That subsection provides that in an action by an ERISA plan participant, beneficiary or fiduciary, "the Court in its discretion may allow a reasonable attorney's fee and costs of the action to either party." In deciding whether to award attorney's fees under section 1132(g)(1), a court should consider such factors as (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the party requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *Monkelis v. Mobay Chemical,* 827 F.2d 935, 936 (3d Cir.1987); *Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 602 n. 9 (2d Cir.), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir.1980); *Iron Workers Local #272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980); *Eaves v. Penn,* 587 F.2d 453, 465 (10th Cir.1978); *Dameron v. Sinai Hosp., Inc.,* 644 F.Supp. 551, 553 (D.Md.1986). The Court, exercising its discretion and considering these factors, denies both parties' motions for attorney's fees.

Neither of the parties acted in bad faith in this action, as demonstrated by the fact that both were successful in part at various stages of the proceeding. Although the defendant ultimately prevailed, it was initially unsuccessful on several motions and its first determination was found to be "arbitrary and capricious." The plaintiff, on the other hand, prevailed in challenging the administrator's initial benefit determination but ultimately failed to obtain the relief he sought. Further, the outcome at every stage was determined by the particular, and somewhat unusual, facts of this action and no significant legal issue was implicated or resolved. In light of these facts, the Court finds neither party is entitled to attorney's fees.

For the foregoing reasons, the Court grants the defendant's summary judgment motion insofar as it seeks a ruling that the plan administrator was correct in concluding that the plaintiff became disabled on December 31, 1985, that his elimination period ran for 180 days from that date and that the plaintiff remained continuously disabled until the end of 1986. The Court denies the defendant's summary judgment motion in all other respects and, in addition, denies *in toto* the plaintiff's summary judgment motion and the cross-motions for attorney's fees.

IT IS SO ORDERED.